378 So.2d 1083 (1979)
Nicholas E. FAKOURI, Plaintiff-Appellee,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant.
No. 7321.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
*1084 Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Edward C. Abell, Jr., Lafayette, for defendant-appellant.
Andrus & Doherty, James P. Doherty, Jr., and Sandoz, Sandoz & Schiff, Leslie J. Schiff, Opelousas, for plaintiff-appellee.
Frederick J. Gisevius, Jr., and Robert Shearman, New Orleans, for plaintiff-in reconvention-appellee.
Nicholas Gachassin, Jr., Lafayette, Robert M. Johnston, New Orleans, Lewis & Lewis, James T. Guglielmo, Boagni & Boagni, Charles F. Boagni, III, Opelousas, for defendant-appellee.
Before DOMENGEAUX, FORET and SWIFT, JJ.
DOMENGEAUX, Judge.
We must decide whether an excess insurer of the type described hereafter, can be held liable for a District Court judgment when the insurer was not a party to the original suit and claims it did not receive its first notice of the claim until after the District Court judgment had become executory. The Twenty-seventh Judicial District Court declared that the insurer can be liable and so held. We affirm.

I. THE JEFFERSON PARISH TRIAL
This protracted litigation had its inception on April 20, 1971, in Metairie, Louisiana, when a milk truck owned by Nicholas E. Fakouri, and driven by one of his employees, rear-ended a stopped school bus operated by Francis Folse. Mr. Folse sued Mr. Fakouri and other defendants, including the Hartford Insurance Company, Mr. Fakouri's primary automobile insurer in the Twenty-fourth Judicial District Court in and for Jefferson Parish. All parties believed at the trial that the Hartford policy was the only one which provided coverage. With that understanding, the case was tried and the defendants were allowed to present evidence to the jury of their inability to pay a judgment much in excess of the $100,000.00 limits of the Hartford policy. The jury found all defendants were liable in solido to Mr. Folse in the amount of $327,926.81. The trial judge adopted the verdict and the judgment was signed on December 18, 1975.
On February 12, 1976, before the case was appealed, Mr. Fakouri located a $1,000,000.00 excess policy issued to him by the Insurance Company of North America (INA).[1] He felt that the policy, which was in effect at the time of the accident, provided coverage for this accident. INA was *1085 immediately notified of the claim and subsequent judgment against Mr. Fakouri, but in a letter dated April 7, 1976, denied coverage on the basis that the policy was a personal catastrophe policy and did not cover the accident in question, which INA concluded was a business loss.
After the judgment was signed on December 18, 1975, Hartford deposited the limits of its policy into the registry of the court. The defense attorney then appealed the judgment on behalf of all defendants except Hartford. When discovery of the INA policy was made, Hartford demanded that INA take over the appeal. INA obliged by hiring the Hartford attorney who had handled the trial for the defendant.
On appeal, the Fourth Circuit reduced the primary judgment by $61,000.00. Folse v. Fakouri, 361 So.2d 887 (La.App. 4th Cir. 1978). However, the Supreme Court reinstated the judgment of the District Court. Folse v. Fakouri, 371 So.2d 1120 (La.1979). On appeal, Mr. Folse had attempted to get INA substituted as a party defendant because its insured, Mr. Fakouri, had been discharged from the debt to Mr. Folse through bankruptcy proceedings. The Court of Appeal and later the Supreme Court quashed the attempt, with the latter court stating, 371 So.2d at 1122:
"It was contended on behalf of plaintiff Folse in the application to this Court for writs that it was error for the Court of Appeal to deny plaintiff's motion to dismiss the appeal as to the named defendants and to fail to substitute INA as a party defendant. However, it is apparent from the final brief filed for plaintiff that only the reduction of the awards is now urged. We take this position to be influenced by the statement in defendants' brief that liability insurers are not indispensable or even necessary parties to a suit. In the event that it is ultimately determined that the policy of INA did provide coverage to the defendant Fakouri, defendants assert, the decision of this Court would control the obligations of the insurer under the terms of its policy, and the plaintiff will suffer no detriment. A separate suit filed in St. Landry Parish is in progress to determine whether INA's policy covered Fakouri." (Emphasis added).

II. THE ST. LANDRY PARISH TRIAL
At about the same time defendants appealed the judgment of the Twenty-fourth Judicial District Court, Mr. Fakouri and William C. Sandoz, his receiver in bankruptcy, filed suit for declaratory judgment against INA in the 27th Judicial District Court in St. Landry Parish to determine whether coverage existed. The suit for declaratory judgment was later converted to an ordinary action when INA filed third party claims against the Kurtz-Casanova-Godchaux Agency, Inc. (K-C-G), and the individuals who comprised K-C-G.[2]
After extensive proceedings at this trial, judgment was rendered and signed on October 25, 1978, against INA and in favor of Francis Folse on all amounts still due and owing from the December 18, 1975, judgment of the Twenty-fourth Judicial District Court. INA has perfected this appeal from the judgment of the Twenty-seventh Judicial District Court.
INA contends that (1) the policy issued by INA to Mr. Fakouri was voided because INA received no notification of the claim, suit, trial, or judgment until the judgment had become executory; (2) notice to K-C-G did not constitute notice to INA; (3) alternatively, if INA is liable to the Folse heirs[3] then K-C-G and the owners of that corporation, Kurtz, Casanova, and Godchaux, and their insurers, are liable to INA. For the following reasons we reject all of INA's contentions on appeal and affirm the District Court judgment.

*1086 A. INA RECEIVED SUFFICIENT NOTICE
We first decide that notice to K-C-G constituted notice to INA. The evidence reflects that in 1967 Mr. Fakouri was issued a personal catastrophe policy written by INA. This policy was sold and delivered to Mr. Fakouri by K-C-G, which was an INA agent at that time. The premium was collected by K-C-G. On April 1, 1968, the general agency agreement between K-C-G and INA was terminated and replaced with a limited agency agreement. Under this revised agreement K-C-G was not authorized to renew INA policies. Mr. Fakouri's excess policy with INA was due to expire on June 30, 1968.
However, before the policy expired (but after the general agency agreement was replaced with a limited one) Herbert Deslatte, Jr., then an INA marketing representative, arranged for K-C-G to broker Mr. Fakouri's excess policy through Howard Johnson, an INA agent. INA did this because it did not want to lose K-C-G's personal catastrophe policyholders. Therefore, on June 6, 1968, INA issued to Mr. Fakouri a renewal policy effective through June 6, 1971. This policy was identical to the original policy. Again, the policy was sold and delivered to Mr. Fakouri by K-C-G, which collected the premiums. With respect to the INA policies, K-C-G was the only insurance agency with whom Mr. Fakouri dealt. Not surprisingly, when the April 20, 1971, accident occurred, K-C-G was the insurance agency that Mr. Fakouri notified.
Section II, Condition B of the excess policy provides:
"Upon the happening of an occurrence reasonably likely to involve the Company under this policy section written notice shall be given as soon as practicable to the Company or any of its authorized agents." (Emphasis added).
INA stresses that K-C-G was not an authorized agent when notice of the accident and subsequent suit was given to K-C-G by Mr. Fakouri. However, Mr. Fakouri was never notified that K-C-G was no longer an authorized agent of INA. INA would have us disregard the basic principle of Civil Code Article 3029 which provides that the revocation of an agent's authority does not become effective against a third party until the third party is notified of the revocation. Since Mr. Fakouri, a third party to the agency agreement between K-C-G and INA, was never notified of the revocation, and since he never communicated or dealt with INA or any of its other agents, his conduct in notifying only K-C-G was entirely reasonable, and fulfilled the requirement of Condition B.
Even if we assume that notice of K-C-G ineffectively served as a notice to INA, the excess insurer's contention that the policy is void because of lack of notice is still without merit because the evidence shows that INA did receive notice of the claim when Mr. Casanova notified it on April 7, 1976. INA argues that notice first received after trial and after the judgment has become executory is untimely as a matter of law. However, the jurisprudence has liberally construed notice provisions in insurance policies in favor of the insured who gives late notice. Thus, the rule has developed in this state that an insurer must prove actual prejudice in order to be able to deny a claim on the basis of not receiving notification as stipulated in the policy contract. Barnes v. Lumbermen's Mutual Casualty Company, 308 So.2d 326 (La.App. 1st Cir. 1975); Miller v. Marcantel, 221 So.2d 557 (La.App. 3rd Cir. 1969); West v. Monroe Bakery, Inc., 217 La. 189, 46 So.2d 122 (1950); Jackson v. State Farm Mutual Automobile Insurance Company, 211 La. 19, 29 So.2d 177 (1946). This Court, in Miller, said:
"The function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice nor to evade the fundamental protective purpose of the insurance contract to assure the insured and the general public that liability claims will be paid up to the policy limits for which premiums were collected. Therefore, unless the insurer is *1087 actually prejudiced by the insured's failure to give notice immediately, the insurer cannot defeat its liability under the policy because of the non-prejudicial failure of its insured to give immediate notice of an accident or claim as stipulated by a policy provision."
After the trial of this case the District Judge stated in his reasons for judgment:
"It has not been shown that the Insurance Company of North America was in any way prejudiced by the manner in which that suit was tried. It was impossible to settle the matter prior to or during trial for the amount of judgment rendered by the jury. In my opinion, had the Insurance Company of North America been made a party to that lawsuit, the result would have been the same."
Our review of the evidence bears out this holding: INA stipulated to the adequacy and competence of the defense presented on behalf of the defendants in the Jefferson Parish trial; INA received the benefit of evidence adduced during that trial showing the impecunious circumstances of the defendants evidence which would not have been introduced had the existence of the excess policy been known prior to trial; and the defendant's brief to the Supreme Court in the Jefferson Parish trial apparently admitted that INA need not be made a party to the suit (371 So.2d 1122). Additionally, and perhaps most significantly, Condition F of Mr. Fakouri's excess policy clearly states:
 "F No action shall lie against the
 Action Company with respect to any
 Against the one occurrence ... until
 Company the amount of the Insured's
 Ultimate Net Loss in excess of
 the retained limit shall have
 been finally determined ...
 by judgment against the Insured
 after actual trial ....
Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Section to the extent of the insurance afforded by this Section. No person or organization shall have any right under this Section to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative." (Emphasis added).
By the explicit terms of Condition F, we see that INA intended to avoid being a party to any lawsuit involving the insured, so holding it liable to pay the excess of the Jefferson Parish judgment does not prejudice INA in any way but, rather, is consistent with the very terms of the policy.
INA also claims, on appeal, that persons who are not parties to actions in personam are not bound by the judgment therein, and enforcement of the judgment against such persons violates the due process clause of the Fifth and Fourteenth Amendments, citing Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). However, since INA presented no such constitutional challenge at trial that argument will not be considered here. Johnson v. Welsh, 334 So.2d 395 (La.1976); Easterly v. Carr, 361 So.2d 279 (La.App. 1st Cir. 1978). We point out that we would find it difficult to entertain that constitutional issue even if it were properly raised in view of the fact that Condition F of the insurance contract, created and prepared by INA, exempts it from being made a party to any action involving the insured.

B. K-C-G ACTED PROPERLY
INA's final contention is that if it is liable to the Folse heirs, then K-C-G and its owners and insurers are liable to INA. INA claims K-C-G failed to notify INA of the accident, thereby breaching the agency relationship that it enjoyed with INA. For the reasons given by the District Judge, quoted below, we find that the K-C-G agency is free of any negligence or other wrongdoing and need not reimburse INA for the amounts that the excess insurer must pay to the Folse heirs:
"The policy issued by the Insurance Company of North America to Mr. Fakouri was, at the time of its issuance, novel in the insurance field. It is apparent that *1088 the insurer was interested in merchandising this new type of policy. In its dealings with LaCombe-Kurtz-Casanova Insurance Company, or this firm as was later designated, the Kurtz-Casanova-Godchaux Agency, the Insurance Company of North America informed their agents that the coverage afforded by the policy was personal only, and did not cover commercial-type risks. This information as to coverage was communicated to Mr. Fakouri by the agent. Because of its instructions to its agents as to coverage, the Insurance Company of North America predisposed the agents (should a claim be made for commercial liability or such a claim be reported by its insured) to inform the insured or claimant that the policy did not afford liability coverage....
I do not find that any failure on the part of Kurtz-Casanova Insurance Agency to notify timely the Insurance Company of North America resulted in prejudicing that insurer; therefore, it is not entitled to third-party recovery on that score. Also, even if notice had been given, the evidence preponderates that the Insurance Company of North America would have denied coverage, and consequently lack of notice cannot form the basis of its third-party action against Kurtz-Casanova Insurance Agency."
Our own evaluation of the evidence in the record confirms our trial brother's holding in this regard. K-C-G's understanding was that the accident involved one of Mr. Fakouri's business vehicles. INA thoroughly schooled K-C-G that this policy provided personal coverage only and contained a business exclusion.[4] In 1976, when K-C-G first became aware that the business exclusion might not exclude the April 21, 1971, accident it immediately notified INA, which denied coverage on the basis that the loss was a business loss and was not covered by the policy, not on the basis that it received late notice.
Since Mr. Fakouri complied with the notice requirementand all other requirements of the policyand INA has not shown actual prejudice, we affirm the judgment of the District Court which directs INA to pay to the Folse heirs the unsatisfied portion of the Jefferson Parish judgment.
For the above and foregoing reasons, the judgment of the District Court is affirmed. Costs are assessed against defendant-appellant.
AFFIRMED.
NOTES
[1] The policy was entitled "Personal Catastrophe Policy" and was designed to protect the insured against certain losses which exceeded the policy limits of the primary insurance. Under Mr. Fakouri's catastrophe policy INA would incur no liability until Mr. Fakouri's loss had been established to be, through settlement or judgment, in excess of $100,000.00 in which case INA would pay the excess up to $1,000,000.00.
[2] The K-C-G Agency has twice changed its name since the original excess policy was issued to Mr. Fakouri in 1967. It formerly was known as LaCombe-Kurtz-Casanova and later as Kurtz-Casanova before it became K-C-G.
[3] On November 27, 1978, Mr. Folse died. His widow has been substituted as his legal representative.
[4] Exclusion h reads:

"(h) except with respect to the ownership, maintenance or use, including loading or unloading, of any Automobile, aircraft or watercraft, (1) to any Business or Business Property (other than farms) of an Insured except to the extent that insurance therefor is provided by an underlying policy listed in Schedule A, nor (2) to the rendering of any professional service or the omission thereof."
Early in the proceedings of the District Court below the Judge granted a partial summary judgment in favor of Mr. Fakouri. That partial judgment, which INA has not appealed, held that exclusion h, the business exclusion of the excess policy, did not defeat coverage of the accident. We assume INA no longer argues that the policy does not cover this accident on the basis that the loss was a business loss.