KIMBALL, Justice.
 

 hWe granted certiorari in this case to determine whether the coverage provision in a claims-made medical malpractice liability insurance policy, which denies coverage for medical malpractice that occurred during the policy period but was first made and reported after the policy period, violates La. R.S. 22:629. That statute prohibits any condition, stipulation or agreement in an insurance contract from limiting a right of action against the insurer to a period of less than one year from the time when the cause of action accrues in connection with all insurances unless otherwise specifically provided in the Insurance Code. We find the claims-made policy at issúe denies coverage for plaintiffs claim, but does not limit plaintiffs right of action against the insurer in violation of La. R.S. 22:629. Additionally, we find that because defendant’s qualification under the Medical Malpractice Act takes effect and follows the same form as the underlying medical malpractice insurance, and 12because defendant did not pay the applicable surcharge by purchasing the relevant tail coverage, he is not a qualified health care provider. Summary judgment is therefore appropriate in this case.
 

 Facts and Procedural History
 

 In April 2003, Carl Hood, plaintiff, sought treatment from Dr. Mark Cotter, defendant, for lower back pain, sleeping difficulties, and anxiety. The petition in this matter alleges that Defendant prescribed a regimen of narcotic drugs with no physical examination or diagnostic testing from April 2003 until August 2003. On September 5, 2003, defendant discharged plaintiff from his care. On April 29, 2004, plaintiff filed suit against defendant alleging that the cause of his symptoms was left undiagnosed and untreated, and that he is
 
 *821
 
 addicted to the narcotic drugs prescribed by defendant.
 
 [1]
 
 On February 15, 2005, defendant amended his petition to name defendant’s medical malpractice insurer, Louisiana Medical Mutual Insurance Company (“LAMMICO”), as a defendant. On July 5, 2005, the Louisiana Patient’s Compensation Fund Oversight Board (“Board”) intervened in the suit seeking a decision as to whether defendant is covered by the Medical Malpractice Act (“MMA”), La. R.S. 40:1299.41
 
 et seq.
 
 for plaintiffs claim.
 

 LAMMICO issued a professional liability policy of insurance to defendant from January 1, 2003, to January 1, 2004, covering “[a]ll sums which the insured shall become legally obligated to pay as damages because of injury, to which this insurance applies, from a medical incident resulting from a negligent act, error, or omission in the rendering or failure to render professional services,
 
 which occurs
 
 |
 
 osubsequent to the retroactive date [of January 1, 1997], and for which claim is first made against the insured and reported to the Company during the policy period.”
 
 (Emphasis added.) This so-called claims-made policy lapsed because of non-renewal on January 1, 2004.
 
 [2]
 
 Prior to the expiration of defendant’s coverage under this policy, LAMMICO offered to provide defendant with a reporting endorsement (“tail coverage”) that would have insured him against claims that arose from medical incidents occurring during the policy period, but were first made and reported after that period; however, defendant did not purchase tail coverage.
 

 On January 3, 2006, LAMMICO filed a motion for summary judgment asserting that its insurance policy did not provide coverage for plaintiffs claim. LAMMICO pointed out that its policy was a claims-made policy that expressly limited coverage to claims first made and reported to LAMMICO while the policy was in force. LAMMICO argued that although the tor-tious conduct alleged by plaintiff against defendant occurred while the policy was in force, the complaint was not made to defendant, LAMMICO, or the Patient’s Compensation Fund (“PCF”) during the policy period. Further, LAMMICO asserted that defendant was not a qualified health care provider under the MMA since his qualification was effective only for “the same period and following the same form” as his filed policy of professional liability insurance. La. R.S. 40:1299.42.
 

 In opposition to LAMMICO’s motion for summary judgment, plaintiff argued that LAMMICO’s claims-made provision is void as it violates La. R.S. 22:629, which |4provides that “[n]o insurance contract shall contain any condition, stipulation of agreement limiting right of action against the insurer to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically
 
 *822
 
 provided in this [Insurance] Code.”
 
 [3]
 
 Plaintiff also cited the first circuit’s decision in
 
 Hedgepeth v. Guerin,
 
 96-1044 (La.App. 1 Cir. 3/27/97), 691 So.2d 1355,
 
 writ denied,
 
 97-1377 (La.9/26/97), 701 So.2d 983, as support for its position that the provision violates the statute and is unenforceable. Defendant also opposed LAMMICO’s motion for summary judgment on the same grounds as plaintiff.
 

 Subsequently, the Board filed a motion for summary judgment. The Board, citing La. R.S. 40:1299.42(A), stated that to be qualified under the MMA, a healthcare provider must pay the proper surcharge and cause to be filed with the Board proof of financial responsibility (here the underlying insurance coverage). The Board argued there was no PCF coverage for plaintiffs claim because the LAMMICO policy provides no underlying coverage for the claim and defendant failed to purchase a PCF extended reporting endorsement or pay the tail coverage surcharge.
 

 Plaintiff opposed the Board’s motion for summary judgment by again arguing that LAMMICO’s claims-made provision violates La. R.S. 22:629 and is therefore void. Plaintiff asserted the statute “basically extends the LAMMICO coverage to one year from the date of the tort” and this extension applies to qualification under the |SMMA as well. Defendant opposed the Board’s motion on similar grounds.
 

 A hearing on both motions for summary judgment was held on March 27, 2006. In oral reasons for judgment, the district court indicated it felt constrained by the first circuit’s decisions in
 
 Hedgepeth v. Guerin,
 
 96-1044 (La.App. 1 Cir. 3/27/97), 691 So.2d 1355,
 
 writ denied,
 
 97-1377 (La.9/26/97), 701 So.2d 983, and
 
 Bennett v. Krupkin,
 
 99-2702 (La.App. 1 Cir. 12/22/00), 779 So.2d 923,
 
 writ denied,
 
 01-0193 (La.3/30/01), 788 So.2d 1190, to find the LAMMICO policy provided coverage for plaintiffs claim. Consequently, it denied LAMMICO’s motion for summary judgment. Regarding the Board’s motion for summary judgment, the district court determined that although it found the LAMMICO policy provided underlying coverage for the claim, defendant did not pay the applicable surcharge to the PCF. Therefore, the district court found defendant did not have PCF coverage for the claim and granted the Board’s motion, dismissing it with prejudice.
 

 Subsequently, LAMMICO sought supervisory review of the denial of its motion for summary judgment, which was denied.
 
 Hood v. Cotter,
 
 06-1086 (La.App. 1 Cir. 9/5/06) (unpub’d writ action). LAMMICO also appealed the granting of the Board’s motion for summary judgment to the court of appeal.
 
 Hood v. Cotter,
 
 06-1390 (La. App. 1 Cir. 12/28/07), 978 So.2d 988. In its appeal, LAMMICO argued that the district court erred in determining its policy provided coverage for plaintiffs claims. Thus, LAMMICO’s appeal included complaints against the district court’s denial of its motion for summary judgment. Before reaching the merits of the appeal, the court,
 
 en banc,
 
 noted, “Arguably, the present appeal is restricted to the issue of PCF’s coverage for the claims filed by [plaintiff].”
 
 Hood v. Cotter,
 
 06-1390, at p. 4, 978 So.2d at 992. Nonetheless, the
 
 *823
 
 court stated, it has allowed review of the denial of a motion for summary judgment filed by the appellant in conjunction with its | (¡review of the granting of a motion for summary judgment against the appellant when the issues involved were “identical.” The court concluded that in this case, the issues involved in the granting of summary judgment in favor of the Board “are directly related” to the issues involved in LAMMICO’s motion for summary judgment. Consequently, the court found that a review of the issue of LAMMICO’s coverage in the appeal before it was appropriate.
 

 Turning to the merits, the court of appeal reversed the grant of summary judgment in favor of the Board and affirmed the denial of LAMMICO’s motion for summary judgment. Citing its prior decision in
 
 Hedgepeth,
 
 the court determined that “[bjecause the policy provision at issue in this case effectively reduced the prescriptive period for making a claim against LAMMICO to less than the statutorily-mandated period, the policy provision is in violation of the statutory law that prohibits the limiting of a right of action against an insurer to less than one year.”
 
 Hood,
 
 06-1390 at p. 8, 978 So.2d at 994. Thus, finding the policy violated La. R.S. 22:629, the court of appeal declared that portion of LAMMICO’s policy that limited its liability to those claims that occurred and were reported while the policy was in force was unenforceable as to those acts of malpractice that occurred during the policy period for which a claim was filed within one year from the accrual of the cause of action and was also reported to the insurer within such time. Based on this reasoning, the court of appeal affirmed the district court’s denial of LAMMICO’s motion for summary judgment.
 

 Regarding the Board’s motion for summary judgment, the court of appeal discussed its. opinion m
 
 Bennett
 
 and determined it was impossible at this stage of the proceedings to determine whether defendant was a qualified health care provider since such qualification is concurrent with the coverage of LAMMICO’s underlying Lpolicy. The court of appeal therefore reversed the district court’s grant of summary judgment in favor of the Board.
 

 Both LAMMICO and the Board applied for review of the court of appeal’s decision in this case. We granted certiorari in each case to determine whether the court of appeal properly resolved the issues relating to this claims-made policy when it concluded summary judgment was inappropriate and ordered the cases consolidated.
 
 Hood v. Cotter,
 
 08-0215 (La.4/18/08), 978 So.2d 337;
 
 Hood v. Cotter,
 
 08-0237 (La.4/18/08), 978 So.2d 337.
 

 Discussion
 

 At the outset, we must briefly address plaintiffs argument that the court of appeal improperly considered the district court’s denial of LAMMICO’s motion for summary judgment in LAMMICO’s appeal of the district court’s grant of summary judgment in favor of the Board. Plaintiff points out that the denial of LAMMICO’s motion for summary judgment is an interlocutory judgment that was not appealable. We agree that the court of appeal did not have appellate jurisdiction to consider the district court’s denial of LAMMICO’s motion for summary judgment.
 
 See
 
 C.C.P. art. 968 (“An appeal does not lie from the court’s refusal to render any judgment on the pleading or summary judgment.”). The court of appeal relied upon its prior jurisprudence that has developed which suggests that even though an appeal involves a restricted issue, a court may address interlocutory issues on appeal if they are “identical” to the issues raised in the appeal.
 
 See Dean v. Griffin Crane & Steel, Inc.,
 
 05-1226 (La.App. 1 Cir. 5/5/06),
 
 *824
 
 935 So.2d 186,
 
 writ denied,
 
 06-1334 (La.9/22/06), 937 So.2d 387. The court of appeal found the granting of the Board’s motion for summary judgment was “directly related” to the issues presented by LAMMICO’s motion for summary judgment. While this situation is not as clear-cut as that in |
 
 ¡Pean,
 
 we recognize that both motions for summary judgment involve a common issue and the court of appeal was perhaps justified in its decision to reach the merits of the ruling denying summary judgment for this reason. In any case, however, we find that court of appeal did not improperly reach the issue of LAMMICO’s motion for summary judgment because it could have chosen to consider this interlocutory ruling under its supervisory jurisdiction.
 
 See, e.g., Unwired Telecom v. Parish of Calcasieu,
 
 03-0732 (La.1/19/05), 903 So.2d 392 (on reh’g). Because the court had supervisory jurisdiction over the district court’s denial of its motion for summary judgment, and explicitly chose to review it, we cannot say the court of appeal’s consideration of this issue was improper.
 

 Regarding the merits, LAMMICO points out that the policy at issue is a claims-made policy, and the provisions of the policy state unambiguously that coverage is limited to claims first made and reported to LAMMICO while the policy is in force. Further, although the tortious conduct alleged by plaintiff occurred while the policy was still in effect, the complaint by plaintiff was not made to either LAM-MICO or the PCF during the policy period. Thus, LAMMICO argues, the policy does not cover plaintiffs claim. It asserts the decision to the contrary by the court of appeal changes its claims-made policy, which has previously been held by this court to be valid under Louisiana law, into an occurrence policy. Plaintiff responds by asserting the claims-made provision im-permissibly violates La. R.S. 22:629, and is therefore void.
 

 A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive 1pdetermination of actions. La. C.C.P. art. 966(A)(2). Appellate courts review a judgment granting or denying a motion for summary judgment
 
 de novo. Bonin v. Westport Ins. Corp.,
 
 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910. Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.
 
 Smith v. Our Lady of the Lake Hosp.,
 
 93-2512, p. 26 (La.7/5/94), 639 So.2d 730, 750.
 

 The claims-made policy in this case provides:
 

 NOTICE — This is a
 
 “claims made
 
 ” policy. Except to the extent as may be provided herein, this coverage is limited to claims first made and reported to the Company while the policy is in force and arising from the performance of professional services subsequent to the retroactive date stated in the declarations ....
 

 I. Coverage Agreements
 

 The Company will pay on behalf of the insured:
 

 A-Individual Professional Liability:
 

 All sums which the insured shall become legally obligated to pay as damages because of injury, to which this insurance applies, from a medical incident result-
 
 *825
 
 mg from a negligent act, error, or omission in the rendering or failure to render professional services, which occurs subsequent to the retroactive date [of January 1, 1997], and for which claim is first made against the insured and reported to the Company during the policy period.
 

 Here, the alleged malpractice occurred from April 2003, through September 5, 2003. The policy expired on its own terms on January 1, 2004. Plaintiff filed suit on defendant on April 29, 2004, and amended his petition to name LAMMICO as a defendant on February 15, 2005. Under the clear terms of the policy, coverage is not provided unless the alleged malpractice occurs after January 1, 1997, and the claim for that alleged malpractice is first made against the insured and reported to | mLAMMICO during the policy period, which ended January 1, 2004. Although the alleged malpractice occurred during the requisite time period, the claim was not made against the insured and reported to LAMMICO during the policy period. Accordingly, under the terms of the contract, there is no coverage for plaintiffs claim.
 

 This court has previously examined claims-made policies on two occasions to determine whether the claims-made policies in those cases violated public policy.
 
 Anderson v. Ichinose,
 
 98-2157 (La.9/8/99), 760 So.2d 302, and
 
 Livingston Parish Sch. Bd. v. Fireman’s Fund Am. Ins. Co.,
 
 282 So.2d 478 (La.1973). In both of those cases, we held that claims-made policies are not
 
 per se
 
 impermissible as against public policy.
 

 In
 
 Livingston Parish School Board,
 
 the roof of a newly constructed building collapsed on July 14, 1969. The engineer responsible for the design, planning and supervision of construction of the building was .among the defendants. His services were performed between August 9, 1968 and prior to July 11, 1969. He was covered by a claims-made professional liability policy from July 11, 1968, to July 11, 1969. Thus, the policy expired and was not renewed three days before the building collapsed. The engineer filed a third-party demand against his insurer, which was dismissed by the trial court on the basis that the policy did not provide coverage. The dismissal was affirmed by the court of appeal. This court granted certiorari “primarily to consider whether a policy clause was void, as against public policy, which denied protection against a loss from conduct covered during the policy year unless, also, formal claim was made during the policy year.”
 
 Livingston Parish Sch. Bd.
 
 at 480.
 

 Justice Tate, writing for the court, sought to determine whether the clause that lulimited coverage to claims made during the policy year was against public policy. In analyzing this issue, the court first pointed out that the insurer had routinely offered to renew the policy long before its expiration, and that, had the insured renewed it, he would have been covered for the collapse of the building. The court then distinguished this type of policy from an occurrence policy, and stated:
 

 Where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible. J.M. Brown Const. Co. v. D & M Mechanical Contr., Inc.,
 
 222 So.2d 93 (La.App. 1st Cir.1969); see also
 
 Home Ins. Co. v. A.J. Warehouse, Inc.,
 
 210 So.2d 544 (La.App. 4th Cir.1968), syllabus 6. This is in accordance with the general principle that, in the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability
 
 *826
 
 and impose such reasonable conditions as they wish upon the obligations they assume by their contract.
 
 Snell v. Stein,
 
 261 La. 358, 259 So.2d 876, 878 (1972), and decisions there cited.
 

 No American decision we could find holds public policy to be offended by discovery and reporting provisions similar to the present. In the decisions cited below, such provisions were uniformly upheld, unless waived.
 

 Livingston Parish Sch. Bd.
 
 at 482 (emphasis added).
 

 Next, the court examined other similar cases around the country, and, agreeing with them, stated that it rejected the contention that such clauses are against public policy. The court continued, “No reasonable expectation of coverage by the insured was defeated by the unambiguous provisions clearly limited coverage to those claims discovered and reported during the policy period.”
 
 Livingston Parish Sch. Bd.
 
 at 482. Finally, the court concluded that, in effect, the insured got what he paid for. Consequently, the court affirmed the lower courts’ dismissal of the third-party demand against the insurer.
 

 Over 25 years later, the issue of the validity of claims-made policies was again 112addressed by this court in
 
 Anderson.
 
 In that case, this court addressed the issue of whether a medical malpractice policy’s denial of coverage when the alleged malpractice occurred within the policy period but the claim was not made or reported until after the policy period expired violated public policy. The malpractice occurred in October 1986, but was not discovered until December 1987. Suit was filed against the negligent doctor in November 1988. The medical malpractice insurer was not added as a defendant until May 1995. The insurer filed a motion for summary judgment, contending there was no coverage under the policy because although the alleged malpractice occurred after the retroactive date of the policy, the claim was not made or reported before the policy expired on October 1, 1987. The insurer viewed as irrelevant the fact that the policy expired before plaintiffs discovered the malpractice. The trial court denied the motion for summary judgment, but the court of appeal reversed and granted summary judgment in favor of the insurer.
 

 In reviewing the judgment of the court of appeal, this court examined the language of the policy, which provided that to be covered the service must have been performed after the applicable retroactive date and the claim must have first been made while the agreement was in effect. The court noted that when the policy expired on October 1, 1987, the doctor did not renew his policy or purchase tail coverage, although it was offered.
 

 The court then quoted a “seminal statement” on the subject of claims-made versus occurrence policies as follows:
 

 With the development of a more complex society, it became more reasonable, particularly with respect to the activities of professionals, to insure against the making of claims, rather than the happening of occurrences, and “claims made” insurance developed to meet a need for professionals to insure against the making of a claim as the insured event, rather than having to struggle with traditional concepts and difficulties inherent in determining | ^whether the “event” insured against was the commission of an act, error or omission or the date of discovery thereof or the date of injury caused thereby. The major distinction between the “occurrence” policy and the “claims made” policy constitutes the difference between the peril insured. In the “occurrence” policy, the peril insured is the “occurrence” itself. Once the “occurrence” takes place, coverage
 
 *827
 
 attaches even though the claim may not be made for some time thereafter. While in the “claims made” policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.
 

 Anderson
 
 at pp. 5-6, 760 So.2d at 305 (quoting Sol Kroll, The Professional Liability Policy “Claims Made”, 13 Forum 842, 843 (1978)).
 

 Next, this court reviewed
 
 Livingston Parish School Board,
 
 and noted that case held that a claims-made policy that clearly limits coverage to acts discovered and reported during the policy period is not per se impermissible. We then determined that in the 26 years since the
 
 Livingston Parish School Board
 
 case, the trend nationwide has been to uphold claims-made policies, and their use has become commonplace. We found that the purpose of the claims-made-and-reported requirement is to ease problems in determining when a claim is made or whether an insured should have known a claim was going to be made. Finally, we observed that the policy works perfectly as long as successive policies are purchased, but that problems arise when the policy is not renewed and tail coverage is not procured.
 

 The
 
 Anderson
 
 court pointed out that unless there is a conflict with statutory provisions or public policy, insurers are free to limit their liability and to impose reasonable conditions upon policy obligations they contractually assume. Plaintiffs, however, asserted two bases for attacking the unambiguous terms on public policy grounds. First, they asserted the Direction Action Statute, La. R.S. 22:655, expresses the public policy that liability insurance is issued primarily for the protection of the public and confers substantive rights on third-party tort victims that are vested when |uthe injury occurs. The court rejected this argument, stating, “The statute does not ... extend the protection of the liability policy to risks that were not covered by the policy or were excluded thereby (at least in the absence of some mandatory coverage provisions in other statutes).”
 
 Anderson
 
 at p. 9, 760 So.2d at 307. The policy unambiguously states that the insured has no right to coverage under these facts, and the Direct Action Statute does not extend any greater right to third party tort victims who were damaged by the insured.
 

 Plaintiffs also contended the policy provisions were contrary to public policy because La. R.S. 40:1299.45(D)(2) prohibits cancellation of medical malpractice insurance policies insofar as the cancellation affects “any claim that arose against the insurer or its insured during the life of the policy.” The court rejected this argument, explaining that cancellation and expiration have entirely distinct meanings, and the policy at issue expired by its own terms and this is not a cancellation of the policy. For all these reasons, the court concluded that the claims-made policy at issue did not violate public policy under the facts of the case.
 

 In the instant case, plaintiff acknowledges the holding of
 
 Anderson,
 
 but points to a first circuit case,
 
 Hedgepeth v. Guerin,
 
 96-1044 (La.App. 1 Cir. 3/27/97), 691 So.2d 1355, for the proposition that this claims-made policy violates public policy because it violates the provisions of La. R.S. 22:629, a statute that was not considered in
 
 Anderson.
 
 In
 
 Hedgepeth,
 
 which was rendered prior to this court’s decision in
 
 Anderson,
 
 the alleged malpractice occurred on October 2, 1985. A medical malpractice action was filed on July 23,
 
 *828
 
 1986.
 
 [4]
 
 The insurance at issue was a claims-made policy covering the period between January 31, 1985, and January 31, 1986. |1sThe insurer filed a motion for summary judgment contending plaintiffs’ claim was made outside the policy period and, therefore, the policy afforded no coverage to the doctor.
 

 In analyzing plaintiffs’ claim that the claims-made policy was against public policy under the facts of their case, the court of appeal pointed out that
 
 Livingston Parish School Board
 
 recognized that such policies could be against public policy in some situations. The court quoted the provisions of La. R.S. 22:629 at issue in the instant case and certain prescriptive statutes, and concluded that medical malpractice claimants are guaranteed a period of not less than one year within which to institute a claim against a health care provider and/or his insurer. The court concluded that the policy before it limited its liability to those acts which occurred and were reported prior to the end of the policy’s coverage. As a result, plaintiffs effectively were limited to less than one year from the date of the malpractice to bring an action against the insurer. Therefore, the court concluded, a policy provision that effectively reduces the prescriptive period against the insurer to less than the statutorily mandated period is without effect.
 

 Thus, based on the first circuit’s decision in
 
 Hedgepeth,
 
 plaintiff contends the LAM-MICO policy violates La. R.S. 22:629. This statute was originally enacted as part of the Insurance Code in 1948. Acts 1948, No. 195. At that time, the pertinent language was identical to the current language. Although the statute has been amended several times since 1948, the language of the provision that is at issue in this case has remained unchanged. In 1978, this court had occasion to address this the portion of La. R.S. 22:629 at issue in this case in Grice
 
 v. Aetna Cas. & Sur. Co.,
 
 359 So.2d 1288 (La.1978). There, plaintiffs home was burglarized on January 31, 1973, and she filed suit against her homeowners’ insurer for its failure to reimburse her for 11(iher loss on September 12, 1974, more than a year after the burglary. The insurer filed an exception of prescription. The policy at issue consisted of a standard fire policy attached to a homeowners’ policy that covered other perils. The standard fire policy contained a provision requiring that the insured render a proof of loss within sixty days after the loss, and the amount of loss shall be payable sixty days thereafter. Plaintiff contended this provision meant that no suit could be filed within sixty days after a loss, which reduced the time to file suit to ten months rather than one year in violation of La. R.S. 22:629. This court held that the clause did, in fact, limit the right of action against the insurer to a period of less than one year. The court concluded that “on the basis of ... Section 629, the limitation in the standard fire policy in question would be considered void because it limits the right of action against the insurer to less than one year, unless it can be held that it is a limitation ‘otherwise specifically provided’ in the Insurance Code.”
 
 Grice
 
 at 1291. The court found that because the Insurance Code required the standard fire policy to include the 60-day provision, it was therefore “otherwise specifically provided” in the Code and the prohibitions of La. R.S. 22:629 were not
 
 *829
 
 violated.
 
 [5]
 
 Consequently, the court found plaintiffs suit was prescribed.
 

 Thus, this court has found the provisions of La. R.S. 22:629 at issue would be violated when the policy clearly provided coverage for a loss, but does not make the covered loss payable by the insurer until sixty days after the loss was sustained. In the instant case, however, the claims-made policy at issue purports to deny coverage of plaintiffs claim. In that way, the instant situation is different from that in (rncejvjin which plaintiffs claim was clearly covered by the policy, but the policy contained a provision that prevented her from filing suit for at least the first sixty days after the accident.
 

 The question in this case, then, remains whether the claims-made policy provision that limits coverage to claims made and reported within the policy period limits the right of action against the insurer in violation of La. R.S. 22:629. An action can only be brought by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. An exception of no right of action is a peremptory exception designed to test whether plaintiff has a real and actual interest in the action. La. C.C.P. art. 927(A)(6). The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit.
 
 Industrial Cos., Inc. v. Durbin,
 
 02-0665, p. 12 (La.1/28/03), 837 So.2d 1207, 1216 (citing
 
 Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n,
 
 94-2015, p. 5 (La.11/30/94), 646 So.2d 885, 888). The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring the suit, but it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation.
 
 Reese v. State,
 
 03-1615, p. 3 (La.2/20/04), 866 So.2d 244, 246;
 
 Industrial Cos.,
 
 02-0665 at p. 12, 837 So.2d at 1216;
 
 Benoit v. Allstate Ins.,
 
 00-0424, p. 10 (La.11/28/00), 773 So.2d 702, 708.
 

 The Direct Action Statute, La. R.S. 22:655, grants a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured.
 
 Cacamo v. Liberty Mut. Fire Ins.,
 
 99-3479, pp. 2-3 (La.6/30/00), 764 So.2d 41, 43;
 
 Descant v. Adm’ of Tulane Educ. Fund,
 
 93-3098 (La.7/5/94), 639 So.2d 246 | ls(La,1994). The Direct Action Statute states its intent is that “all liability policies
 
 within their terms and limits
 
 are executed for the benefit of all injured persons.... ” La. R.S. 22:655(D) (emphasis added). In
 
 Anderson,
 
 this court recognized that the statute does not extend the protection of the liability policy to risks that were not covered by the policy unless another statute requires a mandatory coverage provision.
 
 Anderson
 
 at p. 9, 760 So.2d at 307.
 

 In the instant case, the provision in the claims-made policy limiting coverage to those claims made and reported during the policy period does not limit plaintiffs right to bring his suit against LAMMICO. Rather, it provides the scope of coverage bargained for by defendant. This situation is different from that in
 
 Grice
 
 wherein the insurance policy provided coverage, but did not make the insured’s covered loss due and payable until at least sixty days following submission of proof of loss.
 
 *830
 
 During the sixty-day period following a submission of proof of loss, the insured was prevented from filing suit by the insurance agreement. Here, the claims-made policy denies coverage to defendant for plaintiffs claim, but it does not itself limit plaintiffs right of action. To hold otherwise would effectively convert a claims-made policy into an occurrence policy and change the bargained-for exchange between the insurer and the insured. As this court has previously held, claims-made policies are not per
 
 se
 
 impermissible or against public policy, and we do not interpret La. R.S. 22:629 as prohibiting the claims-made policy provision that makes coverage dependent upon a claim being first made and reported during the policy period. As in
 
 Anderson,
 
 the event that triggered policy coverage simply did not occur during the policy period. La. R.S. 22:629, which does not mandate coverage, but prohibits any condition, stipulation or agreement in an insurance contract from limiting a right of action against the insurer to a period of less than one year from the time when the cause of Inaction accrues, was not violated as the claims-made coverage provision did not impermissibly limit plaintiffs cause of action.
 

 Hedgepeth
 
 was incorrectly decided to the extent it conflicts with this decision. Rather than determining whether the claims-made policy impermissibly limited plaintiffs’ right of action in violation of La. R.S. 22:629, the court cited several “prescriptive statutes,” including La. R.S. 22:629, and concluded a medical malpractice claimant is “guaranteed” a period of not less than one year within which to institute a claim against a health care provider and/or his insurer. The court went on to conclude, “However, a ‘claims made’ policy, requiring that a claim be made within the policy period, may effectively reduce the time period within which a medical malpractice claimant may institute his action against the insurer.”
 
 Hedgepeth
 
 at pp. 13-14, 691 So.2d at 1363. Thus, the court concluded that “a policy provision, which effectively reduces the prescriptive period against the insurer to less than the statutorily mandated period, is without effect.”
 
 Hedgepeth
 
 at p. 14, 691 So.2d at 1364. As discussed above, La. R.S. 22:629 prohibits any condition, stipulation or agreement in an insurance contract from limiting a right of action against the insurer to a period of less than one year from the time when the cause of action accrues; it is not a prescriptive statute nor does not mandate coverage where none is found.
 

 In the instant case, LAMMICO’s claims-made policy expired on January 1, 2004. Defendant was offered tail coverage, but did not purchase it. Thus, upon the expiration of the policy, there was no coverage for any claim that had not yet been made and reported. Such a claims-made coverage provision does not violate the applicable provisions of La. R.S. 22:629 and is not against public policy. Because plaintiffs claim was not first made and reported to LAMMICO before January 1, 2004, the LAMMICO claims-made policy does not provide coverage for plaintiffs |2nclaim. Consequently, summary judgment should have been granted in favor of LAMMICO. The lower courts’ judgments to the contrary were in error.
 

 Turning to the issue of the Board’s motion for summary judgment, we must determine whether defendant is a qualified health care provider under the MMA for purposes of plaintiffs claim.
 
 [6]
 
 La. R.S. 40:1299.42(A) provides:
 

 
 *831
 
 A. To be qualified under the provisions of this Part, a health care provider shall:
 

 (1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this Section.
 

 (2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
 

 Subsection (E)(1) provides with respect to commercially-insured providers:
 

 E.(l) Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider....
 

 In
 
 Abate v. Healthcare Internat’l, Inc.,
 
 560 So.2d 812 (La.1990), we stated that in order to qualify under the MMA, a health care provider must file the type of proof of financial responsibility described in Subsection E and pay the annual PCF surcharge levied on the health care provider as provided by La. R.S. 40:1299.44.
 
 Abate
 
 at 816. Further, Subsection(E) alerts those health care providers that their proof of financial responsibility and, hence, their qualification under § 1299.42, takes effect and follows the same form as the underlying policy of malpractice liability.
 

 Here, the LAMMICO claims-made policy does not provide coverage for plaintiffs claim, which was first made and reported to LAMMICO after the end of l^the policy period. According to Subsection (E), defendant’s qualification under the MMA takes effect and follows the same form as the LAMMICO policy. Because the LAMMICO claims-made policy expired and does not provide underlying coverage for plaintiffs claim, we find defendant’s qualification ceased to be effective when the policy expired and defendant failed to purchase tail coverage. Moreover, by not purchasing PCF tail coverage, defendant failed to pay the surcharge required by La. R.S. 40:1299.42(A)(2). Because defendant did not purchase tail coverage after his claims-made policy expired, he ceased to be qualified health care provider under the MMA. Thus, at the time plaintiffs suit was filed, defendant was not a qualified health care provider. Consequently, the Board’s motion for summary judgment was properly granted by the district court and the court of appeal erred when it reversed this portion of the judgment.
 

 Decree
 

 For the reasons assigned herein, we find the LAMMICO claims-made policy does not provide coverage for plaintiffs claim. Consequently, its motion for summary judgment should have been granted. The court of appeal’s judgment affirming the district court’s denial of summary judgment to LAMMICO is reversed. Summary judgment in favor of LAMMICO is hereby granted and LAMMICO is dismissed with prejudice. Similarly, the trial court’s grant of summary judgment in favor of the Board was improperly reversed by the court of appeal since defendant is not a qualified health care provider under the MMA. The court of appeal’s judgment reversing the district court’s grant of summary judgment in favor of the Board is reversed. Summary judgment in favor of the Board is hereby granted and the Board is dismissed with prejudice.
 

 REVERSED.
 

 [1]
 

 . Prior to the filing of suit in the district court, plaintiff filed a complaint requesting the appointment of a medical review panel on February 2, 2004. Although he was initially notified that defendant was qualified under the provisions of La. R.S. 40:1299.41
 
 et seq.,
 
 on April 21, 2004, plaintiff was informed that defendant was not, in fact, enrolled in the Patent’s Compensation Fund for this complaint.
 

 [2]
 

 . On December 19, 2003, defendant voluntarily surrendered his medical license. Although LAMMICO and the Board have made alternative arguments that defendant’s insurance coverage and PCF qualification lapsed on that date, it is not necessary for us to reach the issue of whether the policy terminated on December 19, 2003, or January 1, 2004, because our analysis and the resolution of the instant matter would be the same in either situation. We will therefore assume the policy expired on the later date of January 1, 2004.
 

 [3]
 

 . La. R.S. 22:629 has been amended since the events at issue in this case occurred. These amendments were primarily in response to the devastation wreaked by Hurricanes Katrina and Rita in this state. The amendments added provisions and changed the subsection lettering and numbering within the statute; however, the language of La. R.S. 22:629 at issue in this case remains unchanged. To avoid confusion, we will refer throughout this opinion to La. R.S. 22:629 as a whole, but we note here that this opinion addresses itself only to that portion of the statute quoted above.
 

 [4]
 

 . This action was dismissed without prejudice because an opinion had not been rendered by a medical review panel. A second suit was filed on November 25, 1991, and the case went to trial thereafter.
 

 [5]
 

 . The court also concluded that the time limit for filing suit contained in the standard fire policy applied to the homeowners' policy attached to the standard fire policy. The court found it significant that the attached homeowners policy had no provision prescribing the time for filing suit on a loss.
 

 [6]
 

 . We note that only LAMMICO, and neither plaintiff nor defendant, appealed the trial court's grant of summary judgment in favor of the Board.