# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-498**
**consolidated with 09-542**

WELDON VITTO, SR.

VERSUS

DONALD RAY DAVIS, ET AL.

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2007-3997
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

************

**MICHAEL G. SULLIVAN**
**JUDGE**

************

Court composed of Oswald A. Decuir, Michael G. Sullivan, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

Kenneth W. DeJean
Attorney at Law
Post Office Box 4325
Lafayette, Louisiana 70502
(337) 235-5294
Counsel for Plaintiff/Appellant:
        Weldon Vitto, Sr.

William H. Parker, III
Allen & Gooch
Post Office Box 81129
Lafayette, Louisiana 70598
(337) 291-1270
Counsel for Defendant/Appellee:
        National Chiropractic Mutual Insurance Company

**Richard J. Petre, Jr.**
**Onebane Law Firm**
**Post Office Drawer 3507**
**Lafayette, Louisiana  70502**
**(337) 237-2660**
**Counsel for Defendants/Appellees:**
      **Deep South Surplus, Inc.**
      **Clarendon America Insurance Company**
      **Donald Ray Davis**
      **Affordable Rent To Own, LLC**
      **Affordable Rent To Own of Lafayette, LLC**
      **Affordable Rent To Own of NewIberia, LLC**
      **Deep South Surplus of Louisiana, LP**

**SULLIVAN, Judge.**

In these consolidated appeals, Weldon Vitto, Sr. (Vitto) seeks review of two trial court judgments granting summary judgment in favor of National Chiropractic Mutual Insurance Company (NCMIC) and dismissing Vitto's claims against it with prejudice. We affirm.

## FACTS AND PROCEDURAL HISTORY

Vitto was involved in an automobile accident on August 30, 2004. He hired former Lafayette attorney, Mel Credeur, to represent him regarding his claims arising from the accident. Although Credeur never filed a suit on Vitto's behalf, he confected a settlement with Clarendon America Insurance Company (Clarendon), the insurer of the tortfeasor, Donald Ray Davis, without Vitto's knowledge and consent. Credeur then negotiated a check and executed a receipt and release per the terms of the settlement.

In December of 2006, Vitto received a copy of a $55,000 check that Clarendon had issued through its servicing agent, Deep South Surplus of Louisiana (Deep South). The check was payable to Credeur and himself, in full and final settlement of his claims associated with the August 2004 automobile accident. Credeur forged Vitto's signature on the check, endorsed it, and deposited it into an account at Home Bank in Lafayette. Vitto received none of the settlement funds.

After learning of the fraud committed against him, Vitto filed two suits in the Fifteenth Judicial District Court in July of 2007.[1] Named as defendants in the first suit were Davis; Affordable Rent to Own, Davis's employer and the owner of the truck Davis was driving at the time of the accident; Deep South; and Clarendon (these

___

[1]Those suits were not consolidated in the trial court.

1

four defendants are collectively referred to hereinafter as "the Accident Defendants"); and Credeur. Named as defendants in the second suit, which was filed on the same date as the first suit, were Home Bank, Clarendon, Deep South, and Credeur. In response to Vitto's first suit, the Accident Defendants filed exceptions of prescription, res judicata, and no cause of action. The trial court granted the exception of res judicata. Vitto appealed on the basis that no valid and final judgment had been rendered for the exception of res judicata to apply. He further contended that the settlement could not constitute a transaction or compromise because he had no knowledge of, nor had he consented to, the settlement. We affirmed the trial court's ruling, noting that:

> Without evidence that the Accident Defendants had knowledge of Mr. Credeur's fraud or that it had reason to suspect that Mr. Credeur was not acting with Mr. Vitto's knowledge and consent when he settled his claims, the settlement cannot be set aside, even though Mr. Vitto did not consent to it.

*Vitto v. Davis*, 08-401, pp. 3-4 (La.App. 3 Cir. 10/1/08), 996 So.2d 550, 553. Clarendon filed similar exceptions in response to Vitto's second suit against it. The trial court in the second suit likewise granted Clarendon's exception of res judicata and dismissed Vitto's suit as to Clarendon. Vitto appealed that ruling, and for the reasons cited in *Vitto*, 996 So.2d 550, a second panel of this court affirmed the trial court's ruling in that matter as well. *Vitto v. Home Bank*, 08-758 (La.App. 3 Cir. 1/28/09), 2 So.3d 1226.

While the two aforementioned appeals were pending, Vitto filed supplemental and amending petitions in both of his trial court suits on July 9, 2008, naming NCMIC, in its capacity as the professional liability insurer of Credeur, as an additional defendant. NCMIC filed an exception of vagueness in both suits with

2

regard to the allegations made against Credeur, its insured. Vitto supplemented both petitions to allege that Credeur had caused injury to him through Credeur's negligence and/or omissions and/or commissions in failing to timely file suit, failing to keep an updated prescription calendar, and in failing to keep a prescription system to prevent the occurrence of such negligent errors.

NCMIC filed motions for summary judgment in both suits asserting that because the policy that it issued to Credeur was a claims-made policy and because Vitto's claim was neither made nor reported to it during the applicable policy period, May 1, 2005 to May 1, 2006, the NCMIC policy did not provide coverage for Vitto's claims. Attached to the motion was an affidavit by Troy Miller, a representative of NCMIC, stating that NCMIC first received notice of the claims against Credeur on July 16, 2008, with formal service of Vitto's amended petition being received on July 17, 2008. The affidavit further provided that NCMIC had never received notice of the claims made subject of this suit from its insured, Credeur.

In its motion, NCMIC acknowledged that the language of claims-made policies had been jurisprudentially modified following the advent of *Hedgepeth v. Guerin*, 96-1044 (La.App. 1 Cir. 3/27/97), 691 So.2d 1355, *writ denied*, 97-1377 (La. 9/26/97), 701 So.2d 983. In *Hedgepeth*, the first circuit held that those portions of a claims-made policy which limited the medical malpractice insurer's liability to only those claims which occurred and were reported during the policy's effective dates violated Louisiana law inasmuch as they limited a plaintiff's right of action against the insurer to less than one year from the date of the malpractice. As a result, the *Hedgepeth* court effectively rewrote the policy to afford coverage "to those acts of malpractice which occurred during the policy period, were filed within one year from accrual of

3

the cause of action, and were reported to the insurer within one year of the date from accrual of the cause of action." *Id.* at 1364. Nevertheless, NCMIC averred that its policy did not provide coverage to Vitto because his claim had not been reported to it within one year of the date of accrual of Vitto's cause of action, whether that be one year from the anniversary of the automobile accident, i.e., August 30, 2005, or one year from December 2006, when Vitto admitted to learning of Credeur's wrongdoing.

Vitto opposed the motion, arguing that because Credeur had constantly reassured him that his suit had been filed and negotiations were ongoing, there was no way for him to have known that fraud had been committed. Following a hearing, the trial court presiding over the first suit granted NCMIC's motion for summary judgment and dismissed Vitto's claims against it. The trial court based its ruling on *Hood v. Cotter*, 08-215 (La. 12/2/08), 5 So.3d 819, noting that it could find no way to distinguish that case from the matter before it. When NCMIC's motion for summary judgment in the second suit came up for hearing a week later, the parties agreed to submit the matter on the pleadings. Based on *Hood*, the trial court granted NCMIC's motion and dismissed Vitto's claims against it.

Vitto appealed both judgments, and his appeals were consolidated by this court. In his sole assignment of error, Vitto asserts that the trial courts erred in granting NCMIC's motions for summary judgment.

**DISCUSSION**

Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730. A motion for summary judgment will be granted if the pleadings, depositions, answers

4

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action . . . ." La.Code Civ.P. art. 966(A)(2).

In *Hood*, a patient sued his former doctor for medical malpractice in April 2004. The doctor had treated the plaintiff from April 2003 until September 2003. The patient later amended his petition in February 2005 to name the doctor's malpractice insurer as a defendant. The insurer had issued a professional liability claims-made policy to the doctor with a policy period of January 1, 2003 to January 1, 2004. The policy was not renewed and lapsed on January 1, 2004. The insurer had offered the doctor tail coverage that would have insured him against claims that arose during the policy period but which were made and reported after the policy period; however, the doctor did not purchase the tail coverage.

The insurer moved for summary judgment on the basis that its policy did not provide coverage for the patient's claim because, although the tortious conduct alleged by the patient had occurred during the policy period, the complaint was not made to the insurer during the policy period. Citing *Hedgepeth*, the patient opposed the motion arguing that the policy's claims-made provision was void because it:

> [V]iolates La. R.S. 22:629, which provides that "[n]o insurance contract shall contain any condition, stipulation or agreement limiting right of action against the insurer to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this [Insurance] Code."

*Hood*, 5 So.3d at 821-22. The trial court denied the insurer's motion for summary judgment, "indicat[ing] it felt constrained by the first circuit's decisions in

5

[*Hedgepeth*] and *Bennett v. Krupkin*, 99-2702 (La.App. 1 Cir. 12/22/00), 779 So.2d 923, *writ denied*, 01-0193 (La.3/30/01), 788 So.2d 1190, to find the LAMMICO policy provided coverage for plaintiff's claim." *Id.* at 822. The first circuit affirmed the denial, citing *Hedgepeth*.[2] The supreme court granted certiorari and reversed, concluding that summary judgment should have been granted in favor of the insurer, observing:

> In the instant case, the provision in the claims-made policy limiting coverage to those claims made and reported during the policy period does not limit plaintiff's right to bring his suit against LAMMICO. Rather, it provides the scope of coverage bargained for by defendant. . . . Here, the claims-made policy denies coverage to defendant for plaintiff's claim, but it does not itself limit plaintiff's right of action. To hold otherwise would effectively convert a claims-made policy into an occurrence policy and change the bargained-for exchange between the insurer and the insured. As this court has previously held, claims-made policies are not *per se* impermissible or against public policy, and we do not interpret La. R.S. 22:629 as prohibiting the claims-made policy provision that makes coverage dependent upon a claim being first made and reported during the policy period. . . .
>
> *Hedgepeth* was incorrectly decided to the extent it conflicts with this decision. . . . La. R.S. 22:629 prohibits any condition, stipulation or agreement in an insurance contract from limiting a right of action against the insurer to a period of less than one year from the time when the cause of action accrues; it is not a prescriptive statute nor does not mandate coverage where none is found.

*Hood*, 5 So.3d at 829-30.

On appeal, Vitto points out that he filed the supplemental petition naming NCMIC as an additional defendant as soon as he discovered that NCMIC had issued a professional liability policy in favor of Credeur. He contends that "he should not be penalized for something over which he and/or his present counsel had <u>absolutely</u>

---

[2]Although the denial of a motion for summary judgment is a non-appealable interlocutory judgment, the appellate court reviewed the denial under its supervisory jurisdiction in conjunction with an appeal taken by the insurer with regard to the granting of a motion for summary judgment in favor of another party because both rulings involved related issues.

no control - Credeur's timely reporting, *vel non*, of Vitto's malpractice claim." He insists that, at least through December of 2006, "he had been repeatedly and specifically advised by Credeur that Credeur had filed a suit against the proper defendants" and, thus, there was "simply no way that [he] could have discovered, within NCMIC's policy period, that he even possessed a claim against Credeur, much less a claim against NCMIC as Credeur's professional liability insurer."

Vitto attempts to distinguish *Hood* on the basis that the plaintiff in that case was aware of his cause of action against his former doctor within the policy period, but the doctor failed to inform his insurer of the plaintiff's claim within the policy period, thus defeating coverage under the policy and entitling the insurer to summary judgment. Vitto submits that, in contrast to the *Hood* plaintiff, he had absolutely no knowledge that he possessed a claim against Credeur or NCMIC until long after the expiration of the NCMIC policy period.

Vitto calls this court's attention to the transcript of the January 12, 2009 hearing in the first suit wherein the trial court expressed its concern that *Hood* did not seem fair, especially in light of the facts at hand where the plaintiff was harmed so late in the policy period. He contends that equity and justice should dictate a different result to him, an innocent plaintiff harmed by the unilateral and wrongful acts of his former attorney. Finally, citing *Fakouri v. Insurance Co. of North America*, 378 So.2d 1083 (La.App. 3 Cir. 1979), Vitto argues that NCMIC failed to demonstrate that it suffered actual prejudice as a result of its having received late notice of Vitto's claim against its insured.[3]

---

[3]Vitto also asks this court to apply the equitable doctrine of *contra non valentem* and reverse the district courts' granting of NCMIC's motions for summary judgment. Because Vitto failed to present this argument to the trial courts, we will not consider it for the first time on appeal.

7

NCMIC contends that arguments similar to those made by Vitto were presented to the *Hood* court and rejected. It rejects Vitto's argument that it was required to prove that it was prejudiced by receiving late notice of Vitto's claim, noting that the *Hood* court "cemented the proposition that claims-made policies are to be enforced as written, with no antecedent showing or prejudice being part of the reasoning." NCMIC further contends that there are no controverted facts at issue, thus making this case appropriate for summary judgment as to NCMIC's liability to Vitto.

We are convinced that *Hood* controls this matter and that the trial courts did not err in granting summary judgment in favor of NCMIC. As in *Hood*, the provision in the NCMIC policy limiting coverage to those claims that were both made and reported during the policy period does not serve to limit Vitto's right to bring suit against NCMIC. "Rather, it provides the scope of coverage bargained for by [the] defendant," Credeur. *Hood*, 5 So.3d 829. While, as in *Hood*, this result may seem inequitable at first glance, "[t]o hold otherwise would effectively convert a claims-made policy into an occurrence policy and change the bargained-for exchange between the insurer and the insured." *Id.* at 830. Vitto still has a right of action; that right is just not against Credeur's insurer, NCMIC, because Vitto's claim was not made and reported to NCMIC during the applicable policy period. NCMIC is correct in its assertion that the arguments similar to those now made by Vitto based on equity and justice were at play when *Hood* was decided, and those arguments did not change the outcome of that case. Finally, we reject Vitto's claim that *Fakouri* dictates that NCMIC was required to demonstrate that it suffered actual prejudice as a result of its having received late notice of Vitto's claim. The policy at issue in *Fakouri* was not a claims-made policy, and Vitto's reliance on *Fakouri* is misplaced. Moreover, if the

8

law required a claims-made insurer who received late notice of a claim to make a showing of actual prejudice, the *Hood* court would have noted such a requirement.

**DECREE**

For the foregoing reasons, the two trial court judgments granting summary judgment in favor of National Chiropractic Mutual Insurance Company and dismissing Weldon Vitto, Sr.'s claims against it with prejudice are affirmed.  Costs of this appeal are assessed against Weldon Vitto, Sr.

**AFFIRMED.**