# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-110


## OLYMPIA MINERALS, LLC, ET AL.

## VERSUS

## HS RESOURCES, INC., ET AL.

**\*\*\*\*\*\*\*\*\***

## ON REMAND

**\*\*\*\*\*\*\*\*\***


## APPEAL FROM THE
## THIRTY-SIXTH JUDICIAL DISTRICT COURT
## PARISH OF BEAUREGARD,  NO. 2005-0927
## THE HONORABLE H. WARD FONTENOT, PRESIDING

**\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and John E. Conery, Judges.


**PEREMPTORY EXCEPTION OF NO RIGHT OF ACTION AS TO ASPECT RESOURCES AND PEREMPTORY EXCEPTION OF PRESCRIPTION AS TO ASPECT ENERGY GRANTED. TRIAL COURT'S JUDGMENT MANDATING TRANSFER OF THE FIELD TAPES AND FIELD DATA IS REAFFIRMED.**

**David Ramsey Lestage**
**F. Steven Landreneau**
**Hall, Lestage & Landreneau**
**Post Office Box 880**
**DeRidder, Louisiana 70634**
**(337) 463-8692**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Aspect Resources, LLC**
    **Aspect Energy, LLC**

**Thomas M. Flanagan**
**Andy Dupre**
**Charles-Theodore Zerner**
**Flanagan Partners, LLP**
**201 St. Charles Avenue, Suite 2405**
**New Orleans, Louisiana 70170**
**(504) 569-0235**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Aspect Resources, LLC**
    **Aspect Energy, LLC**

**Barry Lee Wertz**
**Jonathan D. Baughman**
**Chris L. Halgren**
**McGinnis, Lochridge & Kilgore, LLP**
**1111 Louisiana, Suite 4500**
**Houston, Texas 77002**
**(713) 615-8500**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Aspect Energy, LLC**
    **Aspect Resources, LLC**

**Carlos R. Soltero**
**Mark Domel**
**Nicholas P. Laurent**
**McGinnis Lochridge & Kilgore, LLP**
**600 Congress Avenue, Suite 2100**
**Austin, Texas 78701**
**(512) 495-6000**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Aspect Energy, LLC**
    **Aspect Resources, LLC**

**M. Hampton Carver**
**John Anthony Dunlap**
**Carver, Darden, Koretzky, Tessier, Finn,**
**Blossman &Areaux, LLC**
**1100 Poydras Street, #3100**
**New Orleans, Louisiana 70163**
**(504) 585-3800**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 **Olympia Minerals, LLC**
 **Olympia Minerals Leasing, LLC**

**Barry Barnett**
**Daniel H. Charest**
**Susman Godfrey, LLP**
**901 Main Street, Suite 5100**
**Dallas, Texas 75202**
**(214) 754-1900**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 **Olympia Minerals, LLC**
 **Olympia Minerals Leasing, LLC**

**Brian D. Melton**
**Brian M. Gillett**
**Susman, Godfrey, LLP**
**1000 Louisiana, Suite 5100**
**Houston, Texas 77002-5096**
**(713) 651-9366**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 **Olympia Minerals, LLC**
 **Olympia Minerals Leasing, LLC**

**H. Alston Johnson III**
**Phelps Dunbar, LLC**
**400 Convention Street, Suite 1100**
**Baton Rouge, Louisiana 70802-5618**
**(225) 346-0285**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 **Olympia Minerals, LLC**
 **Olympia Minerals Leasing, LLC**

**Leslie R. Leavoy, Jr.**
**Attorney at Law**
**125 North Washington Street**
**Post Office Box 1055**
**DeRidder, Louisiana 70634**
**(377) 462-6051**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Olympia Minerals, LLC**
    **Olympia Minerals Leasing, LLC**
    **The Wiser Oil Company**
    **Bass Partnership**
    **Cinco Resources, Inc.**
    **Direct Energy Partner, Ltd.**
    **Orr Exploration, Ltd. Sabine Development Company, LLC**

**David Patrick Long**
**Patton, Boggs, LLP**
**2000 McKinney Avenue, Suite 1700**
**Dallas, Texas 75201**
**(214) 758-1509**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Cinco Resources, Inc.**
    **Direct Energy Partner, Ltd.**
    **Orr Exploration, Ltd.**
    **Hayes Exploration, Ltd.**
    **Tedora Exploration, Ltd.**
    **Sabine Development Company**

**CONERY, Judge.**

This case was initially before this court on an appeal filed on behalf of Aspect Resources, LLC (Aspect Resources) and the intervenor, Aspect Energy, LLC (Aspect Energy), seeking to reverse the ruling of the district court in favor of Olympia Minerals, LLC and Olympia Minerals Leasing, LLC (collectively, Olympia)[1] for breach of the August 1, 2000 contract designated as the North Starks Project Agreement (NSPA). Among other obligations, the trial court found the NSPA obligated HSR[2] and Aspect Resources to conduct a 3-D seismic survey of the lands described in the NSPA, lease fifteen percent of the mineral interests covered therein, and turn over all seismic data, including "field tapes" and "raw data" to the then mineral interest owner, El Paso. The main object of the contract was for the exploration and development and eventual sale of oil and gas in paying quantities in everyone's best interest. Olympia subsequently acquired the interests of El Paso. The trial court awarded damages for breach of the NSPA and ordered Aspect Resources and Aspect Energy to turn over the raw data or "field tapes" from the seismic survey in question to Olympia.

On appeal, this court affirmed in part and reversed in part, reversing only the trial court's award to Olympia of $7,120,140.00 for the loss of royalties. *Olympia*

---

[1] The Olympia entities are the successors in interest to El Paso Minerals, Inc. and El Paso Leasing, Inc. (EPMI). The El Paso entities are subsidiaries of El Paso Production Company (El Paso).

[2] The original co-defendant, HS Resources, Inc. (HSR), merged on August 1, 2001 with Kerr-McGee and from that point on did business as Kerr-McGee Rocky Mountain, LLC (Kerr -Mc-Gee). Kerr-McGee settled its claims with Olympia prior to trial.

*Minerals, LLC v. HS Resources, Inc.*, 13-110 (La.App.3 Cir. 8/21/13), 123 So.3d 281.[3]

All parties sought review in the supreme court, with the exception of those companies who were original plaintiffs with Olympia, referred to by this court and the supreme court as the "working interest owners" (WIOs).[4] In *Olympia Minerals, LLC v. HS Resources, Inc.*, 13-2637/13-2717 (La. 10/15/14) (unpublished opinion), the Louisiana Supreme Court affirmed in part, amended in part, and remanded to this court for "re-evaluation of the reconventional demands" and instructed:[5]

> Aspect Resources brought reconventional demands against Olympia (formerly El Paso), alleging that because the agreement maintained ownership of seismic data with Aspect Resources, El Paso/Olympia and others not party to the agreement are liable for exceeding the permissible use of that data under a license incorporated into the larger agreement. The district court ruled that because of Aspect Resources' failure to fulfill the terms of the agreement, the agreement was judicially dissolved and there was no license restriction imposed on El Paso/Olympia and the others who allegedly used the data. The court of appeal affirmed for the same reasons. Central to the reasoning of both lower courts was their ruling that Aspect Resources had breached an obligation to sublease mineral interests. However, we have found that Aspect Resources was not required by the agreement to sublease. Therefore, because the court of appeal, when adopting the reasoning of the district court essentially pretermitted reaching the merits of Aspect Resources' arguments, we remand this matter to the court of appeal to review the correctness of the dismissal of the reconventional demands, and as that court then

---

[3] The opinion of this court, in the referenced cite, provides a complete and thorough review of both the procedural posture and underlying issues.

[4] The WIOs were non-parties to the NSPA, but joined with Olympia as plaintiffs, as alleged third-party beneficiaries to the NSPA for a loss of royalties claim, and were defendants in both Aspect Resources' reconventional demand and Aspect Energy's intervention. The WIOs include Wiser Oil, Bass Partnership, Cinco Resources, Inc., Direct Energy Partner, Ltd., Hayes Exploration, Ltd., Orr Exploration, Ltd., Sabine Development Company, LLC, and Tedora Exploration, Ltd. In June 2004, Wiser Oil was acquired by and then merged into Forest Oil Corporation, referred to as Forest Oil.

[5] The supreme court opinion likewise provides a complete and thorough review of the procedural history and issues decided. We will limit our review thereof to that which is necessary for an understanding of our resolution of the case.

deems necessary and appropriate, the court may reach the merits of the reconventional demands, consistent with the rulings in this opinion.

*Id.* at 45-46.

The supreme court further instructed that, if necessary, this court was in the alternative to "remand to the district court if additional evidence is required." *Id.* at 42. Following this instruction, in Footnote 17, the supreme court stated:

Parenthetically, we note that litigants who were not party to the agreement are also potentially liable as targets of Aspect Resources' reconventional demands. Those litigants have been put on notice of this court's granting of discretionary review, but none of those litigants has filed a brief in opposition to Aspect Resources' request for reinstatement of the reconventional demands.

*Id.* at n. 17.

In its opinion, the supreme court discussed Aspect Resources' reconventional demands against Olympia and the WIOs:

Aspect Resources has sought review of the district court's dismissal of reconventional demands brought against El Paso, now Olympia, and against the working interest owners, not parties to the contract but seeking damages against Aspect Resources under a theory of being third party beneficiaries. Aspect Resources' reconventional demands are premised on the alleged misappropriation of seismic data contrary to the terms of the license agreement and in violation of the Louisiana Uniform Trade Secrets Act and/or the Louisiana Unfair Trade Practices Act.

*Id.* at 41.

Thus, on remand, the supreme court asked us to consider all of the reconventional demands, "as [the third circuit] then deems necessary and appropriate." *Id.* at 42.

In response to the supreme court's remand, we ordered additional briefing from the parties and fixed the case for oral argument, held on January 28, 2015. This court received briefing by both sides on the issues relating to Aspect

3

Resources' reconventional demands. This court also received briefing jointly submitted by Olympia and the WIOs urging consideration of their peremptory exception of no right of action as against Aspect Resources and their peremptory exception of prescription as against Aspect Energy. The WIOs, who were non-parties to the NSPA, were made defendants in the reconventional demand filed by Aspect Resources primarily alleging violations of the Louisiana Uniform Trade Secrets Act (LUTSA).[6]

Prior to ruling on the merits of Aspect Resources' reconventional demand and Aspect Energy's intervention, we have been asked by Olympia and the WIOs to "consider and grant their peremptory exception of no right of action [as to Aspect Resources] and prescription [as to Aspect Energy]."

For the following reasons, this court grants the peremptory exception of no right of action as to Aspect Resources and the peremptory exception of prescription as to Aspect Energy, originally jointly filed by Olympia and the WIOs in the district court, and dismisses all claims of Aspect Resources and Aspect Energy, with prejudice at their costs.

### SUPPLEMENTAL FACTS AND PROCEDURAL HISTORY OF THE PEREMPTORY EXCEPTIONS

On August 9, 2011, just prior to the bench trial in this case, Olympia and the WIOs jointly filed a peremptory exception of no right of action as to Aspect Resources and a peremptory exception of prescription as to Aspect Energy. Aspect

---

[6] Aspect Resources' original reconventional demand also alleged claims for unfair trade practices, conversion, negligence, continuing torts, civil conspiracy, unjust enrichment, and quantum meruit, all of which were based on Aspect Resources' alleged ownership of the 3-D, Seismic Data, Exhibit D to the NSPA.

Resources filed a response to the exception of no right of action, and Aspect Energy responded to the exception of prescription.

The trial court heard arguments on both exceptions from opposing counsel, but deferred the exceptions to the trial on the merits, stating:

> The Court states for the record that he did a little review of the law and the record last night. When I previously said that a court on its own can recognize the exception of prescription, the Court was mistaken because the Court cannot. [But] the prescription has been submitted to the Court, it has been supplied as, the language the code uses. And the Court can rule on it at the appropriate time. The Court therefore determines that the issues of the prescription and the no right cause of action will all be referred to the merits of the case, during the presentation of the case.

After its initial ruling to defer to the merits, the trial court changed its position on one issue and decided the exception of prescription, filing its "Reasons for Judgment on Plaintiffs' Peremptory Exception of Prescription." The trial court denied Olympia and the WIOs' jointly filed exception of prescription seeking to dismiss Aspect Energy's February 18, 2011 intervention and on October 7, 2011, signed a judgment denying the exception. No ruling was made on the jointly filed peremptory exception of no right of action as to Aspect Resources.

A bench trial on the merits began on October 31, 2011, and at the close of trial, the trial court ordered post-trial briefing by the parties. In response to the trial court's order, Olympia and the WIOs timely filed "Plaintiffs' Response to Aspect's Post-Trial Brief on Aspect's Affirmative Claims," wherein Olympia and the WIOs jointly renewed the arguments supporting their exception of no right of action against Aspect Resources, and timely sought reconsideration of the trial court's denial of their exception of prescription against Aspect Energy.

These exceptions were not finally ruled upon by either the trial court or this court. Both peremptory exceptions were rendered moot by the trial court's ruling

5

granting Olympia's request for dissolution of the NSPA and damages for its breach, affirmed in part by this court.

## *Jurisdiction on Appeal*

Aspect Resources and Aspect Energy responded in their briefing on remand in opposition to the renewal of Olympia and the WIOs' peremptory exceptions that the "appellees exceptions are procedurally improper and should be summarily overruled." We do not agree.

Louisiana Code of Civil Procedure Article 928(B) provides that peremptory exceptions, including the exceptions of no right of action and prescription, may be "pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision." In the case of Olympia and the WIOs' exceptions, each was submitted to the trial court prior to the trial court's ultimate decision in favor of Olympia on the merits of the case. The trial court's decision on the merits in favor of Olympia obviated the need for the trial court to rule on Olympia and the WIOs' exception of no right of action against Aspect Resources, or reconsider its denial of Olympia and the WIOs' exception of prescription against Aspect Energy.

Based on the dismissal of both Aspect Resources' reconventional demands and Aspect Energy's intervention on the merits, it was unnecessary for Olympia, as the prevailing party on the merits, to appeal or answer the appeal to this court or the supreme court in order to preserve the exceptions. Louisiana Code of Civil Procedure Article 2133(B) provides, "A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme court, may assert, in support of the judgment, any argument supported by the

6

record, although he has not appealed, answered the appeal, or applied for supervisory writs."[7]

The supreme court discussed and clarified the application of La.Code Civ.P. art. 2133(B) in *Bond v. Commercial Union Assurance Co.*, 407 So. 2d 401 (La.1981). In *Bond*, the court reviewed prior rulings of the courts of appeal, stating:

> Likewise, our courts of appeal have held that the prevailing party at the trial level may raise his exceptions on appeal even if he has not sought the appeal nor answered the loser's appeal. The failure of the defendant to appeal or answer the plaintiff's appeal did not procedurally bar the court of appeal from considering the defendant's overruled exception urging no cause and no right of action.

*Id.* at 405. The court further held:

> However, we disagree with plaintiff's contention that the defendant has abandoned this issue, and we agree with the Third Circuit that C.C.P. arts. 2083 and 2133 were not designed to require a successful party to insure his judgment below by appealing every adverse ruling on an interlocutory order simply because the appellate court may overturn the trial court's final decision in his favor on the merits.

*Id.* at 406.

Both Aspect entities argue that since the exceptions were again filed in this court, La.Code Civ.P. art. 2163 controls. Once again, we do not agree. Louisiana Code of Civil Procedure Article 2163 provides:

> The appellate court may consider the peremptory exception filed for the **first time in that** court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.
>
> If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception.

---

[7] The application of La.Code Civ.P art. 2133(B) also applies to the WIOs, who as co-plaintiffs with Olympia were seeking damages under the NSPA as third party beneficiaries. Although the WIOs did not prevail on their individual claims on the merits, the dissolution of the NSPA also made it unnecessary under La.Code Civ. P. art. 2133(B) for the WIOs to appeal the peremptory exceptions jointly filed with Olympia.

(Emphasis added.)

The record in this case clearly demonstrates that Olympia and the WIOs' peremptory exceptions were not filed for the first time in this court, but were filed first in the district court prior to submission of the case for decision on the merits. Due to the ruling by the trial court in favor of Olympia on the merits of the dissolution and the breach of contract claims, no ruling by the trial court was made on Olympia and the WIOs' peremptory exception of no right of action against Aspect Resources. Likewise, the trial court did not reach Olympia and the WIOs' request for reconsideration of its ruling denying the peremptory exception of prescription against Aspect Energy. Thus, this court has jurisdiction to determine the merits of Olympia and the WIOs' peremptory exception of no right of action against Aspect Resources and their peremptory exception of prescription filed against Aspect Energy, which are now ripe for this court's consideration.

## PROCEDURAL HISTORY AND CONTEXT RELATED TO THE PEREMPTORY EXCEPTIONS FILED BY OLYMPIA AND THE WIOs

Both the trial court and this court found that Olympia (then El Paso) had performed its obligations under the NSPA by keeping the 42,000 acres of leased mineral rights on lands subject to the NSPA out of commerce for the one year term of the NSPA. This finding was also affirmed by the supreme court[8] and is now the law of the case. *See Leger v.Weinstein*, 03-1497 (La.App. 3 Cir. 10/27/04), 885

---

[8] In *Olympia*, 13-2637, the supreme court stated:

> We similarly reject the argument of Aspect Resources that the award for the incomplete survey should be reversed because El Paso suffered no loss by not having the complete survey. We reject this argument not only because we have found the survey was specifically described as one of the benefits of the bargain, but also because, as part of that very same bargain, El Paso, in an effort to obtain a full survey, kept its mineral interests covering approximately 42,000 acres out of commerce for one year pursuant to the agreement's "exclusive option" in favor of Aspect Resources.

*Id*. at 40.

So.2d 701, *writs denied*, 04-2903 and 04-2899 (La. 2/04/05), 893 So.2d 873 and 882. Except for the claims and allegations made in the reconventional demand and intervention, pertaining only to Exhibit D of the NSPA, the Seismic Agreement, Olympia fulfilled its obligations under the NSPA and there are no other contractual claims under the NSPA for us to decide.

Indeed, the main purpose and intent of the NSPA was stated in the second paragraph of the document:

> HSR and ASPECT desire to conduct a 3-D seismic survey (the "Survey") covering approximately 135 square miles over an area encompassing the North Starks Project Area as described in Exhibit A-1(the "North Starks Project Area"), located in Calcasieu and Beauregard Parishes, Louisiana. **EPMI [El Paso] desires to enter into this Agreement to more fully set forth their agreement regarding HSR and ASPECT's identification, exploration and development of potential hydrocarbon accumulations and the acquisition by HSR and ASPECT of rights to conduct the Survey and drill exploratory wells on EPMI [El Paso] lands included in the North Starks Project Area.**

(Emphasis added.)

Section 1.3, which discussed leasing options provided in pertinent part:

> *HSR and ASPECT shall lease a minimum of 15% of the EPMI* **[El Paso]** *Lands subject to the exclusive option, **and shall work jointly with EPMI [El Paso] to prioritize the EPMI** [El Paso] **Lands that may be subject to prescription and actively manage the exploration program to maximize EPMI's [El Paso's] preservation of its mineral interests.***

(Second emphasis ours.)

The primary object and purpose of the contract, then, was for the energy and exploration companies, Aspect Resources and HSR, to explore and develop the mineral acres leased by El Paso (now Olympia) and to give preference to those areas that may be subject to lease expiration due to time limits on the leases set forth in El Paso's (now Olympia's) original mineral leases with the landowners.

9

In order to facilitate the main objective of the NSPA, Aspect Resources was to pay for a 3-D seismic survey, have "an option" to lease fifteen percent of the mineral acres, and work jointly with El Paso to develop its prospects.[9]

Since El Paso (Olympia) fulfilled its part of the contract by keeping its mineral acres out of commerce for one year, Aspect Resources' reconventional demands only address Olympia's alleged obligations under Exhibit D to the NSPA, the Seismic Agreement, and Olympia's alleged breach of the confidentially provisions thereof by sharing confidential data allegedly belonging to Aspect Resources with the WIOs.

### Aspect Resources' Original Reconventional Demand

On July 12, 2006, Aspect Resources filed its original reconventional demand in conjunction with its answer to Olympia's September 22, 2005 original petition. Aspect Resources claimed that in connection with the NSPA, El Paso (now Olympia) agreed with Kerr-McGee and Aspect Resources to the "terms of a Seismic Data License Agreement [Seismic Agreement], a copy of which" is attached as Exhibit D to the North Starks Project Agreement."

Per the terms of the Seismic Agreement, Kerr-McGee and Aspect Resources "were the collective 'Licensor" and El Paso was the 'Licensee' of any confidential seismic data collected by Kerr McGee and Aspect [Resources] pursuant to the North Starks Project Agreement and more particularly, pursuant to the 3-D Seismic Permit."

Aspect Resources original reconventional demand further provided at paragraph seven, "Under the Seismic Data License Agreement, Kerr McGee and

---

[9] Both the trial court and this court found that the "option" in the contract was actually an **obligation** to lease, one of the obligations which Aspect Resources breached, thus voiding the contract. Our supreme court disagreed, hence the remand.

Aspect [Resources] retained title to and full and exclusive ownership of the seismic data they collected, including but not limited to the exclusive right to license, trade, loan, transfer, and reproduce that data."

In connection with the alleged breach of the Seismic Agreement by Olympia, Aspect Resources stated in paragraph thirteen that, pursuant to the NSPA, Aspect Resources provided to El Paso in June 2001, a "copy of the Subject 3-D Seismic Data," which was subject to the confidentiality provisions of the Seismic Agreement. Paragraph fifteen continues, "Upon information and belief, Olympia Minerals and Olympia Leasing obtained possession of the Subject 3-D Seismic Data from El Paso sometime in 2003." Thus, Aspect Resources specifically alleged that the breach of the Seismic Agreement by Olympia had to have occurred sometime **after** its receipt of the 3-D Seismic Data **in 2003**. Paragraph sixteen of Aspect Resources' reconventional demand alleged that Olympia, "improperly allowed third parties to access the Subject 3-D Seismic Data." The "third parties" were the WIOs.

### *Aspect Resources' Louisiana Uniform Trade Secrets Act Claim (LUTSA)*

Aspect Resources' reconventional demand also alleged a claim under the LUTSA against Olympia and the WIOs, also based on Olympia's having improperly allowed third parties (WIOs) to access the 3-D Seismic Data governed by the Seismic Agreement.

Paragraph twenty-four alleged, "The Subject 3-D Seismic Data and related geophysical data collected by Kerr McGee and Aspect [Resources] constitutes a

11

'trade secret' owned by Kerr McGee and Aspect [Resources], as that term is defined in the Louisiana Uniform Trade Secrets Act, La.R.S. 51:1431(4)."[10]

### *Aspect Energy's Motion to Intervene*

On February 18, 2011, Aspect Energy filed a "Motion to Intervene as an Additional Plaintiff in Reconvention." In the intervention, Aspect Energy stated, "Aspect Energy, an affiliate of Aspect Resources, is a co-owner of the 3-D Seismic Data in this dispute and bears a direct and immediate interest in the instant action and **asserts the same claims** that have been asserted by its co-owner of the data, Kerr-McGee."[11]  (Emphasis in original.)

Paragraph eight of Aspect Energy's intervention then discussed the transfer of the 3-D Seismic Data and stated:

> Effective December 12, 2001, Aspect Resources conveyed to Aspect Energy all proprietary seismic data (as opposed to rights arising through a license agreement with another party), to which Aspect Resources has a proprietary ownership interest.  Thus, Aspect Resources conveyed its interest in the Subject 3-D Seismic Data to Aspect Energy.  Although Aspect Energy obtained an ownership interest in the Subject 3-D Seismic Data, Aspect Energy contemporaneously granted a license to the Subject 3-D Seismic Data to Aspect Resources on December 12, 2001.

Aspect Energy's intervention in paragraph nine further provided:

> Aspect Energy seeks to intervene into this lawsuit in order to protect its rights as a co-owner of the Subject 3-D Seismic Data in dispute.  Aspect Energy's Petition-In-Intervention sets forth only the causes of action which it shares with the co-owner of the data, Kerr-

---

[10] As previously stated, Aspect Resources' original reconventional demand also alleged claims for unfair trade practices, conversion, negligence, continuing torts, civil conspiracy, unjust enrichment, and quantum meruit, which were based on Aspect Resources' ownership of the 3-D Seismic Data and its rights under the NSPA.

[11] The intervention of Aspect Energy very carefully adopted only the claims of the alleged co-owner of the 3-D Seismic Data, Kerr-McGee and not those of Aspect Resources.  In Aspect Energy's memorandum in support of its motion to intervene, Aspect Energy specifically adopted the pleadings contained in Kerr-McGee's original, first and second reconventional demands.  As previously indicated Kerr-McGee settled prior to trial.

McGee. Aspect Energy's Petition-In-Intervention does not allege any new cause of action or seek any relief not already before this Court. **Aspect Resources is still a proper party in this lawsuit in regard to the North Starks Project Agreement, as Aspect Resources did not assign or otherwise convey its rights in the North Starks Project Agreement to Aspect Energy.**

(Emphasis added.)

Thus, on December 12, 2001, Aspect Resources assigned to Aspect Energy its entire ownership interest in the Seismic 3-D Data. Also on December 12, 2001, in a document entitled "Proprietary Data License Agreement," Aspect Energy as "Data Owner" granted Aspect Resources, as "Licensee," only the right to use the 3-D Seismic Data. Likewise, Aspect Energy also licensed the 3-D Seismic Data to Samedan Oil Corporation, a non-party to this litigation.

From the inception of the litigation in 2005, Aspect Resources' reconventional demand against Olympia was based on its alleged ownership of the 3-D Seismic Data. Aspect Resources claimed in their reconventional demand that Olympia breached the confidentiality provisions of Exhibit D of the NSPA when it allegedly shared the Seismic 3-D Data with the WIOs. The breach of the confidentiality provisions by Olympia with the WIOs was also the basis of Aspect Resources' claim pursuant to the LUTSA against both entities.

The intervention by Aspect Energy in February 2011 was the first indication in the pleadings that Aspect Resources was not the owner of the 3-D Seismic Data.[12] Aspect Energy's intervention revealed that Aspect Resources' "proprietary ownership interest" in the 3-D Seismic Data was transferred to Aspect Energy on December 12, 2001. In its intervention, Aspect Energy also claimed the breach of

---

[12] Aspect Energy's motion to intervene as an additional plaintiff in reconvention stated that counsel for Aspect Resources, discovered the "GENERAL ASSIGNMENT, BILL OF SALE, AND ASSUMPTION AGREEMENT" (General Assignment) in November 2010 and produced the document to Olympia on November 16, 2010.

the confidentiality provisions by Olympia with the WIOs as the basis of its LUTSA claim against both entities.

The December 12, 2001 transfer of Aspect Resources' "proprietary ownership interest" in the 3-D Seismic Data occurred some three years prior to the receipt by Olympia of the 3-D Seismic Data in 2004. Aspect Resources' claim against Olympia for its allegedly improper sharing of the data was not filed until 2006, some five years **after** Aspect Resources had assigned ownership of the data to Aspect Energy.

### *Aspect Resources' Second Supplemental and Reconventional Demand*

On February 23, 2011, some ten years after it had assigned ownership of the 3-D Seismic Data to Aspect Energy, Aspect Resources filed its Second Supplemental and Amended Reconventional Demand against Olympia and the WIOs, still maintaining its claims in its original reconventional demand as a co-owner with Kerr-McGee of the Seismic 3-D Data referenced in Exhibit D of the NSPA. Aspect Resources' second supplemental and amended reconventional demand added claims for spoliation against Olympia and the WIOs.

In paragraph fifteen, Aspect Resources alleged for the first time the details of the transfer of its "proprietary ownership interest" in the 3-D Seismic Data to Aspect Energy on December 12, 2001. In paragraph sixteen, Aspect Resources also claimed its status as a "proper party" to the litigation and stated, "Aspect Resources is still a proper party to this lawsuit in regard to the North Starks Project Agreement, as Aspect Resources did not assign or otherwise convey its rights in the North Starks Project Agreement to Aspect Energy."

***Olympia and the WIOs' Response to the Aspect Entities' Filings***

Olympia and the WIOs' answer to Aspect Resources' second supplemental and amended reconventional demand, in its fifteenth defense, stated, "Aspect Resources asserts that it is no longer the owner of the subject 3-D Seismic Data. As such, it has no standing to assert many of the claims asserted in the Reconventional Demand."

The filing of Aspect Energy's intervention and Aspect Resources' second supplemental and amended reconventional demand also prompted the filing in August 2011 of Olympia and the WIOs' jointly filed peremptory exception of no right of action against Aspect Resources and peremptory exception of prescription against Aspect Energy, seeking to dismiss all claims made by the Aspect entities. Each will be addressed separately below.

## LAW AND DISCUSSION

***Peremptory Exception of No Right of Action***

Louisiana Code of Civil Procedure Article 927(A) provides a non-exclusive list of seven objections that may be raised by peremptory exception, including: "(6) No right of action, or no interest in the plaintiff to institute the suit." As stated, Olympia and the WIOs filed an exception of no right of action in the trial court on August 9, 2011, shortly before the trial of this matter, and we have discussed the procedural status of the exception. We further note that, pursuant to La.Code Civ.P. art. 927(B), the peremptory exception of no right of action can be raised by the trial or appellate court on its own motion, even if the exception has not been filed by a party.

15

In *Hood v. Cotter*, 08-215, p. 17 (La. 12/2/08), 5 So.3d 819, 829, the supreme court succinctly summarized the analysis for determination of a litigant's right of action:

> An action can only be brought by a person having a real and actual interest which he asserts. La. C.C.P art. 681. An exception of no right of action is a peremptory exception designed to test whether plaintiff has a real and actual interest in the action. La. C.C.P art. 927(A)[6]. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. *Industrial Cos. Inc. V. Durbin*, 02-0665, p. 12 ( 1/28/03), 837 So.2d 1207, 1216 (citing *Louisiana Paddlewheels v. Louisiana Riverboat Comm'n*, 94-2015, p. 5 (La. 11/ 30/ 94), 646 So. 2d 885, 888). The focus in an exception of no right of action is on whether the particular plaintiff has a right to bring suit, but it assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation.

Therefore, we must assume that Aspect Resources' reconventional demand stated a "valid cause of action" against Olympia for the breach of the 3-D Seismic Agreement, as well as the LUTSA claim against both Olympia and the WIOs, and then determine whether Aspect Resources possessed the "legal interest in the subject matter of the litigation" to pursue its reconventional demand against both entities. *Cotter*, 5 So.3d at 829. Further, "Unlike an exception of no cause of action, evidence may be presented in connection with an exception of no right of action to show that the plaintiff does not possess the right it claims or that the right does not exist." *Acadian Corp v. Olin Corp.*, 97-174, p. 6 (La.App. 3 Cir. 6/18/97), 698 So.2d 9, 13.

Louisiana Civil Code Article 2642 allows the assignment of all rights, except those which are "strictly personal." Louisiana Code of Civil Procedure

Article 698(2) indicates that the proper party to enforce the assignment of an "incorporeal right" is "[t]he assignee, when the entire right is assigned."

The district court deferred the exception of no right of action to the merits on the basis that the relationship between the Aspect entities was unclear. However, the pleadings submitted by both Aspect Resources in their reconventional demand and Aspect Energy in their intervention, as well as the record and exhibits admitted at trial, clarified the legal relationship between Aspect Resources and Aspect Energy.

The record reflects that at the time Aspect Resources filed its original reconventional demand on July 12, 2006, it was not, as alleged, the owner of the 3-D Seismic Data, but only a non-exclusive licensee of the Data, along with Samedan Oil Corporation, a non-party. As previously discussed, Aspect Resources' right to the ownership of the 3-D Seismic Data had been assigned to Aspect Energy on December 12, 2001, in a document entitled "GENERAL ASSIGNMENT, BILL OF SALE, AND ASSUMPTION AGREEMENT" admitted as an exhibit at trial.[13] Therefore, Aspect Energy, as the assignee, and not Aspect Resources, was the party "with a real and actual interest in the action," by virtue of the December 12, 2001 General Assignment. *Hood*, 5 So.3d at 829.

Aspect Resources' claim pursuant to the LUTSA was also based on its ownership of the 3-D Seismic Data, which Aspect Resources alleged constituted a "trade secret" under the provisions of the Act. Once again, the record does not support Aspect Resources' claims of ownership, but clearly reflects that Aspect

---

[13] The General Assignment was admitted into evidence at trial on November 2, 2011, as Exhibit 547 and on November 7, 2011, as Exhibit 1050. The General Assignment was also attached as a sealed exhibit to Aspect Energy's original opposition to Olympia and the WIOs' peremptory exception of prescription.

17

Resources, at the time of filing its reconventional demand, was only a non-exclusive licensee of the 3-D Seismic Data referenced in Exhibit D of the NSPA.

The provisions of the LUTSA, in particular, La. R.S. 51:1432 and La.R.S. 51:1433, which provide for injunctive relief and damages respectively under the Act, both indicate in Comment (d), "Where more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy." In *McPhearson v. Shell Oil Co.*, 584 So.2d 373, 376 (La.App. 4 Cir. 7/31/91), a panel of our sister circuit also determined, "Misappropriation of a trade secret entitles the **owner** to injunctive relief, as well as damages." (Emphasis added.) *See* La.R.S. 51:1432 and La.R.S. 51:1433.

At the time of Olympia and the WIOs' alleged breach of the confidentiality provisions of the 3-D Seismic Agreement in 2004, Aspect Energy, as owner of the data in question, and not Aspect Resources, as a non-exclusive licensee, was the entity "from whom misappropriation occurred" and for whom a remedy is provided under a LUTSA claim, La.R.S. 51:1432, and La.R.S. 51:1433.

Moreover, according to at least one learned commentator, the decision by Aspect Resources, with the concurrence of its co-owner, Kerr-McGee, to assign its ownership of the 3-D Seismic Data to Aspect Energy had the legal and practical effect of ending any alleged solidarity as to ownership of the data. 5 La. Civ. L. Treatise Law of Obligations § 6.54 (2d ed.)(citing 7 Planiol et Ripert, Traité Pratique de Droit Civil Français 418 (2d ed. 1952)).

For the foregoing reasons, we grant the peremptory exception of no right of action against Aspect Resources, dismissing with prejudice and at its cost, Aspect Resources' reconventional demands against Olympia Minerals, LLC, and Olympia

Minerals Leasing, LLC, Wiser Oil, Bass Partnership, Cinco Resources, Inc., Direct Energy Partner, Ltd., Hayes Exploration, Ltd., Orr Exploration, Ltd., Sabine Development Company, LLC, and Tedora Exploration, Ltd.[14]

*Peremptory Exception of Prescription*

In a hearing held on September 12 and 13, 2011, the trial court also entertained oral argument from counsel on the exception of prescription as to Aspect Energy's intervention. As previously stated, the trial court initially declined to rule on both of the peremptory exceptions, referring both to the merits. However, prior to trial, on September 28, 2011, the trial court denied the peremptory exception of prescription in "Reason's for Judgment on Plaintiffs' Peremptory Exception of Prescription." The trial court found that, "the timely filing of the reconventional demand by Kerr-[McGee] interrupted prescription to the benefit of the co-owner of the seismic data, whether it was Aspect Resources or Aspect Energy."

After the trial on the merits, in post-trial briefing, Olympia and the WIOs jointly sought reconsideration of the peremptory exception of prescription to dismiss all claims made in Aspect Energy's February 23, 2011 intervention. Olympia and the WIOs once again urged the application of La.Code Civ.P. art. 1067. As in the case of Olympia and the WIOs' jointly filed peremptory exception of no right of action against Aspect Resources, the trial court did not rule on their request for reconsideration of the peremptory exception of prescription against

_____

[14] Aspect Resources' original reconventional demand also alleged claims for unfair trade practices, conversion, negligence, continuing torts, civil conspiracy, unjust enrichment, and quantum meruit, which were all based on Aspect Resources' ownership of the 3-D Seismic Data and its rights under the NSPA. Aspect Resources' second reconventional demand also alleged claims for spoliation.

Aspect Energy due to its ruling in favor of Olympia on the merits of its breach of contract and dissolution claim.

### *Standard of Review*

We find that a reversible error of law was made in the trial court on Olympia and the WIOs' peremptory exception of prescription. We are now required to re-determine the facts *de novo* from the entire record and render a judgment on the merits. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

In its ruling of September 28, 2011, on the peremptory exception of prescription, the trial court's findings were entirely based on the ownership of the Seismic 3-D Data. The trial court stated, "Obviously, the ownership of the data is essential to pursue the alleged violations in its disclosure, so the purpose of the intervention was simply to substitute the present owner for the past owner in the reconvention."

However, the trial court committed an error of law in failing to apply La.Code Civ.P. art. 1067 as urged by Olympia and the WIOs. The trial court found that the reconventional demand of Kerr-McGee served to interrupt prescription for the intervention of Aspect Energy, the co-owner of the 3-D Seismic Data, based on an "indivisible obligation." Although not specifically stated, the trial court relied on the "relation back" provisions of La.Code Civ.P art. 1153.[15]

---

[15] Louisiana Code of Civil Procedure Article 1153 provides, "When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading."

Louisiana Code of Civil Procedure Article 1067 provides in pertinent part, "An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and **is filed within ninety days of date of service of main demand**." (Emphasis added.)

Prior to the trial court's denial of the peremptory exception of prescription seeking to dismiss the intervention of Aspect Energy, the supreme court issued a ruling clarifying the application of La.Code Civ.P. art. 1067 in *Stenson v. City of Oberlin*, 10-826 (La. 3/15/11), 60 So.3d 1205. In *Stenson*, the supreme court stated that pursuant to La.Code Civ.P. art. 1031, an intervention is considered an "incidental demand," and thus the language of La.Code Civ.P. art. 1067 governs the prescriptive period for the filing of an intervention. In so holding, the supreme court reversed the appellate court, and applied La.Code Civ.P. art. 1067, the ninety-day time limitation for incidental demands, stating:

> In sum, we find that applying Article 1153 and the factors enunciated in *Giroir* [*v. South La. Med. Ctr., Div. of Hosp.*, 475 So.2d 1040 (La.1985)] to petitions seeking to intervene in the main demand would expand Article 1153 beyond the scope intended by the legislature. Accordingly, we find the court of appeal below erred in applying Article 1153 and the *Giroir* factors to the instant petition of the Fuseliers seeking to intervene in the Stenson plaintiffs petition, rather than Article 1067 governing incidental demands such as interventions.

*Stenson*, 60 So.3d at 1214.

A panel of this court applied La.Code Civ.P. art. 1067 to the question of prescription and the timely filing of an intervention in *State Farm Mut. Auto Ins. Co. v. Forrestier*, 12-1391 (La.App. 3 Cir. 4/3/12), 112 So.3d 974, *writ denied*, 13-1021, (La. 6/14/13), 118 So.3d 1091. In *State Farm*, a panel of this court affirmed the trial court's finding that La.Code Civ.P art. 1067 controlled and that the

intervention at issue had not been timely filed within the one year prescriptive period required by La.Civ.Code art. 3492, or within ninety days of the service of the main demand as required by La.Code Civ.P art. 1067. The court also stated:

> Further, we find no merit to the Loiseaus' claims that prescription was interrupted as a result of State Farm's filing of the main demand. In *Stenson*, 60 So.3d at 1214, the supreme court stated that "Article 1067 is the applicable statute governing the exception [of] prescription or preemption for an intervention."

*State Farm*,112 So.3d at 978.

Olympia and the WIOs' original petition, which is the "main demand," was filed on September 22, 2005.[16] Thus, it is undisputed that the intervention filed on behalf of Aspect Energy on February 23, 2011, was not filed within the ninety-day requirement of La.Code Civ.P art. 1067. The trial court's decision to deny the exception was, therefore, legally erroneous, as to the claim of Aspect Energy against Olympia and the WIOs for violating the "confidentiality provisions" of the NSPA, Exhibit D, Seismic Permit.

### Aspect Energy's Louisiana Uniform Trade Secrets Act Claim

Louisiana Revised Statutes 51:1436 provides for the prescriptive period for an action pursuant to the LUTSA and states: "An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purpose of this Section, a continuing misappropriation constitutes a single claim."

Aspect Energy's February 23, 2011 intervention stated that on "October 14, 2004 . . . Kerr-McGee learned of the misappropriation of the Subject 3-D Seismic

---

[16] BLACK'S LAW DICTIONARY 462 (8th ed. 2004) provides, "**main demand.** *Civil law.* A plaintiff's principal or primary claim against one or more defendants, contained in an original or validly amended pleading."

Data." Aspect Energy in its intervention, asserted the same claims asserted by Kerr-McGee, its co-owner of the 3-D Seismic data. Therefore, Aspect Energy also discovered the alleged "misappropriation" by Olympia and the WIOs on "October 14, 2004." Thus, Aspect Energy's claim under the LUTSA also prescribed on October 14, 2007, based on Aspect Energy's failure to file within the three year prescriptive period provided in La.R.S. 51:1436. Regardless, pursuant to *Stenson* and La.Code Civ.P. art. 1067, Aspect Energy's LUTSA claim had also prescribed for failure to file its intervention within ninety days of the filing of Olympia and the WIOs' main demand in September 2005.

### *Aspect Energy's Additional Claims*

Aspect Energy's intervention also alleged claims under the Louisiana Unfair Trade Practices Act (LUTPA), conversion, negligence, civil conspiracy, unjust enrichment, and spoliation. Louisiana Revised Statutes 51:1409(E) provides the prescriptive period for a claim pursuant to the LUTPA: "The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to the right of action." The prescriptive period for the additional causes of action claimed by Aspect Energy are governed by La.Civ. Code art. 3492, and "are subject to a liberative prescription of one year."[17] Therefore, each of these additional claims was not filed within the applicable prescriptive period. And most importantly, as discussed previously, each is further subject to the ninety-day filing requirement for an intervention pursuant to La.Code Civ.P. art. 1067.

---

[17] Louisiana Civil Code Article 3492 provides in pertinent part, "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."

Aspect Energy's intervention also attempted to state a claim for breach of contract. However, in all of the pleadings filed by Aspect Resources and Aspect Energy, each entity clearly indicated that any rights which might give rise to a claim under the contractual provisions of the NSPA properly belonged to Aspect Resources, as the signee to the NSPA. Therefore, we need not address additional breach of contract issues in the context of Aspect Energy's intervention. There are simply no breach of contract claims not previously addressed as to Aspect Energy.

Accordingly, we find that the trial court erred in failing to apply the prescriptive period of La.Code Civ.P. art. 1067, grant the exception, and dismiss Aspect Energy's intervention. For the foregoing reasons, we grant the peremptory exception of prescription against Aspect Energy, dismissing its intervention and all demands contained therein against Olympia and the WIOs, with prejudice, and at Aspect Energy's cost.

***Transfer of the Field Tapes and Field Data***

Based on the dismissal of Aspect Resources' reconventional demands and Aspect Energy's intervention, we reaffirm that portion of the trial court's August 14, 2012 judgment which stated:

> The Court also grants judgment in favor of Olympia Minerals, LLC and Olympia Minerals Leasing, LLC against Aspect Resources, LLC on rights to the field tapes. Aspect Resources, LLC and Aspect Energy, LLC shall make prompt delivery of the field tapes and all field data from the North Starks Project Agreement seismic survey when this judgment becomes non-appealable. The Court notes that the parties have entered into an agreed addendum to the protective order to address possession and use of certain seismic data during the pendency of an appeal, if any, from this judgment. The protective order shall govern the field tapes and field data until the Court's judgment becomes non-appealable.

24

## CONCLUSION

For the reasons given, the peremptory exception of no right of action filed on behalf of the Appellees dismissing the reconventional demands of Aspect Resources is granted. The trial court's ruling denying Appellees' peremptory exception of prescription to dismiss the intervention of Aspect Energy is reversed and granted in favor of Olympia Minerals, LLC, and Olympia Minerals Leasing, LLC, Wiser Oil (now Forest Oil Corporation), Bass Partnership, Cinco Resources, Inc., Direct Energy Partner, Ltd., Hayes Exploration, Ltd., Orr Exploration, Ltd., Sabine Development Company, LLC, and Tedora Exploration, Ltd. All Claims of Aspect Resources and Aspect Energy are hereby dismissed, with prejudice, and at their costs. The trial court's judgment mandating the transfer of the Field Tapes and Field Data from Aspect Resources and Aspect Energy to Olympia Minerals, LLC and Olympia Minerals Leasing, LLC is reaffirmed. All costs of this appeal are assessed equally to Aspect Resources and Aspect Energy.

**PEREMPTORY EXCEPTION OF NO RIGHT OF ACTION AS TO ASPECT RESOURCES AND PEREMPTORY EXCEPTION OF PRESCRIPTION AS TO ASPECT ENERGY GRANTED. TRIAL COURT'S JUDGMENT MANDATING TRANSFER OF THE FIELD TAPES AND FIELD DATA IS REAFFIRMED.**